COMMONWEALTH *vs.* CHARLES W. BOSWORTH.

Berkshire.    September 21, 1926. — October 13, 1926.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Practice, Criminal,* Charge to jury. *Motor Vehicle,* Operation. *Words,* "Safety of the public."

At the trial of a complaint charging the defendant with operating a motor vehicle on a way "at a rate of speed greater than is reasonable and proper, having regard to traffic and the use of the way and the safety of the public," there was evidence that the defendant drove his automobile at the rate of thirty-five miles per hour on Main Street in the business portion of Lee on a day in June at a little after 7 P.M., when there were no pedestrians in the road, were some on the bordering sidewalks, were parked cars with no occupants beside the road, and, when the defendant was two hundred to two hundred and fifty feet away, there were one or two vehicles on the road. In construing the language of G. L. c. 90, § 17, the judge instructed the jury that the statute furnished three tests: the traffic, as to which they were to take into consideration the traffic by pedestrians and by vehicles on the designated street at that time; the use of the way, as to which they were to consider whether the way was a much used or a little used street, the size of the community and the extent to which the thoroughfare was used or might be used, from any evidence in the case; and the "safety of the public," which meant the condition of freedom from danger or hazard or harm on the part of the entire community of Lee "at any time." The defendant alleged exceptions, contending that the instructions permitted the jurors to find him guilty if the rate of speed at which he was moving, although, under the conditions existing at the time, it involved no risk to the safety of the public there present, might, under other circumstances and at other times, put the safety of another public in danger. *Held,* that

(1) Properly interpreted, the judge instructed the jury that in order to find the defendant guilty they must be satisfied that, at the moment complained of, his speed was not reasonable and proper, in view (1) of the traffic then upon the road; (2) of the use — potential as well as actual — then being made of the road by all entitled to use it; and (3)

of the broad considerations of safety to the public, applicable at all times to the use of highways, which then and there should govern the actions of any one operating an automobile upon them;

(2)  So interpreted, the instructions stated the law accurately;

(3)  The interpretation put by the judge on the word "public" was too favorable to the defendant and therefore did not harm him.

The word "public" as used in the phrase "safety of the public" in G. L. c. 90, § 17, means the entire community exposed to risk of injury by conduct which in the opinion of reasonable men is, always and everywhere, a menace to safety, although in particular circumstances it may produce no injury.

The words "at any time" as used by the judge in his charge did not authorize a verdict of guilty under a complaint for violation of that statute if, in conditions of traffic and use of the road other than those shown in evidence at the trial of the complaint, public safety might be endangered by the speed at which the defendant was operating, unless it would be so endangered no matter what the immediate conditions of traffic and use.

COMPLAINT, received and sworn to in the District Court of Lee on June 6, 1925, charging the defendant with operating a motor vehicle on a public way, namely, Main Street in Lee, "at a rate of speed greater than is reasonable and proper, having regard to traffic and the use of the way and the safety of the public."

On appeal to the Superior Court, the complaint was tried before *Dillon,* J., then a judge of a district court sitting in the Superior Court under Sts. 1923, c. 469; 1924, c. 485.  Material evidence, instructions to the jury, and exceptions by the defendant are described in the opinion.  The defendant was found guilty and alleged exceptions.

Section 17 of G. L. c. 90 reads as follows:

"No person operating a motor vehicle on any way shall run it at a rate of speed greater than is reasonable and proper, having regard to traffic and the use of the way and the safety of the public.  It shall be *prima facie* evidence of a rate of speed greater than is reasonable and proper as aforesaid if a motor vehicle is operated on any way outside of a thickly settled or business district at a rate of speed exceeding twenty miles per hour for the distance of a quarter of a mile, or inside a thickly settled or business district at a rate of speed exceeding fifteen miles per hour for the distance of one eighth of a mile, or in any place where the operator's or chauffeur's

view of the road traffic is obstructed either upon approaching an intersecting way, or in traversing a crossing or intersection of ways, or in going around a corner or a curve in a way, at a rate of speed exceeding eight miles per hour."

*C. W. Bosworth, pro se.*

*J. Fallon,* Assistant District Attorney, for the Commonwealth.

WAIT, J.    No error appears in the rulings and orders made by the judge in the course of the introduction of evidence. The rulings objected to related to the repetition of questions in cross-examination; the limit of cross-examination; the determination whether questions sought immaterial testimony, or argumentative discussion of testimony already given, or answers tending to contradict testimony given elsewhere, or whether the form of the question was fair to the witness. All these were matters of discretion for the judge in the conduct of the trial. No valid exception lies to his rulings thereon. *Demerritt* v. *Randall,* 116 Mass. 331. *Miller* v. *Smith,* 112 Mass. 470, 476. *Smith* v. *Boston Elevated Railway,* 208 Mass. 186.

The material question raised by the bill of exceptions is, whether the judge was in error in his interpretation of the words "the safety of the public" in G. L. c. 90, § 17.

The defendant was tried upon a complaint which charged that he operated an automobile upon Main Street in Lee "at a rate of speed greater than was reasonable and proper, having regard to traffic, the use of the way and the safety of the public." The evidence disclosed that no accident took place and no person or property was injured. The jury could find that upon a straight road with an up grade increasing in degree in the direction in which he was going, in a business portion of the town, the defendant drove his car at a rate of speed estimated by himself at from twenty-five to thirty miles, and by other witnesses at thirty and thirty-five miles, per hour. There was no pedestrian in the road. There were people on the sidewalks on both sides of the road; and one witness testified that he had just crossed the road diagonally, and had reached a point at the sidewalk from which he first saw the defendant approaching some two

hundred and fifty to three hundred feet away. This witness declared that he saw an automobile moving toward the defendant on the opposite side of the road some time before he saw the defendant's car. Another witness testified that he drove a car from Main Street into a side street at right angles to that road, when the defendant was about two hundred feet away. These cars (or this car if there really was but one) were the only moving vehicles on the road within the limits specified by the prosecution. There were a few cars parked at angles of forty-five degrees at the sides of the road, which was fifty feet wide between curbs. There was no evidence that any person was in these cars. The surface of the road was a dry concrete. A street car track ran along the center of the road. There was no evidence of any defective condition of the automobile. The time was a little after seven o'clock in the evening of June 5, 1925. The defendant contended that he was driving in what, at the time, practically was a deserted street.

The judge "instructed the jury in substance that the Commonwealth had not made out a *prima facie* case within the meaning of" G. L. c. 90, § 17, and then went on:

"So that we come back to the other part of the statute, to determine upon all the evidence and upon all the fair inferences of fact to be drawn from the evidence whether or not the speed of the operator was greater than was reasonable and proper, having regard to the three specifications, as it were, laid down in the law. In other words, the statute furnished you with three test questions, or three tests to determine the answer to the question: Was the motor vehicle run at a rate greater than is reasonable and proper?

"Now what are those three tests? First, the traffic. The words 'reasonable and proper' are to be read in regard to traffic and the use of the way and the safety of the public. Now with reference to traffic, you are to take into consideration, from all the evidence, what was the traffic in the main street of Lee at that time, about seven o'clock on the evening of June 5. What motor vehicles or other vehicles were in that street, stationary or in motion? What pedestrians were in that street at that time, standing still or in motion?

Now with regard to those facts and a review of the evidence relating to those facts, you can reach a conclusion as to what was the traffic.

"Now the next, the use of the way. In that regard you are to take into consideration what this street was, whether it was a main thoroughfare, whether it was a much used street in the town of Lee or a little used street in the town of Lee. You can take into consideration the presence of street railway tracks as they are indicated and shown upon the plan. You can take into consideration any other facts relating to the size of the community or the extent to which this thoroughfare was used or may be used, from any evidence in this case.

"Now thirdly, with regard to the safety of the public. Now what does that mean? What does the word 'public' mean? Generally speaking, it means the people in general. Generally speaking, that's what it means. Not the people in this particular locality at this particular time, but the people of the entire community, and perhaps it may be said, using the first and general use of the term, the public outside and beyond the immediate community of the town of Lee. But for the purposes of this case, it is perhaps advisable, it is perhaps the law to read the word 'public' in the light of the entire community of Lee, and that is a fair definition of the word 'public' in that sense.

"Now, then, as applied to the term 'public safety,' I say to you that the fair meaning of that is the definition usually given of the condition of being safe, the condition of freedom from danger or hazard or harm, the condition of freedom from danger or hazard or harm on the part of the entire community of Lee.

"Now test the evidence from those three angles, the standpoint of the traffic in the way at the time; the standpoint of the use of the way at the time, and the standpoint of the safety of the public at any time within the meaning of those words as I have explained them.

"Now if you find that on all the facts and on all the fair inferences of fact to be drawn from the testimony that this method of operation at this time and place was reasonable

and proper, from those view points, why, then you would be warranted in concluding that the defendant was exercising his rights in the highway and was violating no law; but if on the other hand, as measured from those three points, you find that the rate of speed, that the manner of operation was not reasonable and proper, then there would be established for the purpose of this case all the essential elements constituting the crime described in this statute, and you would be warranted in finding that the defendant was guilty."

The defendant contends that this charge permitted the jurors to find him guilty if the rate of speed at which he was moving, although, under the conditions existing at the time, it involved no risk to the safety of the public there present, might, under other circumstances and at other times, put the safety of another public in danger. He contends that he is prejudiced by the scope given to the word "public" and by the distinction drawn between conditions of "traffic" and of "the use of the way" at the moment of the alleged offence and "of the safety of the public" at any time. His contention is, that the only public concerned is that portion of the public within possibility of immediate injury, and the only risks to safety to be considered are the specific risks of imminent injury to which he exposed it in the conditions then and there existing.

We do not so interpret the charge. Its language, as intended by the judge and as understood by the jury, in our opinion, instructed the jurors that in order to find the defendant guilty they must be satisfied that, at the moment complained of, his speed, then, was not reasonable and proper, in view (1) of the traffic then upon the road; (2) of the use — potential as well as actual — then being made of the road by all entitled to use it; and (3) of the broad considerations of safety to the public, applicable at all times to the use of highways, which, then and there, should govern the actions of any one operating an automobile upon them. Such an instruction states the law accurately. It gives full effect to the three elements posited by the statute; and it does not authorize a verdict of guilty based upon elements not present and not involved in the actual occurrence.

The defendant has not been injured by the limitation put upon "public" by the judge. It was too favorable to him. It confined "public" to the entire community of Lee; but the public with which the statute here is dealing is the entire community exposed to risk of injury by conduct which in the opinion of reasonable men is, always and everywhere, a menace to safety, although in particular circumstances it may produce no injury. The words "at any time" applied to the safety of the public distinguished properly between the universal extent of the broad considerations to be weighed by the jury thereupon and the circumstances of time and place of the occurrence which they were to weigh with reference to the traffic and, as the judge instructed them, with reference to the use of the road. They cannot be understood to authorize a verdict of guilty, if under other conditions of traffic and use of the road, public safety might be endangered by the speed at which the defendant was operating, unless it would be so endangered no matter what the immediate conditions of traffic and use.

*Exceptions overruled.*