COMMONWEALTH *vs.* CHIN KEE.

Middlesex.     April 3, 1933. — June 5, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & DONAHUE, JJ.

*Practice, Criminal*, Appeal with assignments of error; New trial; Conduct of trial: cross-examination, experiments, argument by counsel. *Witness*, Cross-examination, Impeachment, Credibility. *Evidence*, Competency, Admissions. *Homicide*.

Upon an appeal with assignments of error following a verdict of guilty at the trial of an indictment, an assignment not based on an exception saved by the defendant at the trial is not open to him as of right at the argument in this court.

Questions which could have been raised by the defendant at the trial of an indictment cannot be raised by him as of right at the hearing of a motion for a new trial.

Although, upon an appeal with assignments of error following a verdict of guilty at the trial of an indictment, one of the errors assigned being the denial of a motion for a new trial, it appeared that all the questions raised at the hearing of the motion could have been raised at the trial and that the defendant argued some matters concerning which he had saved no exception at the trial, this court considered the denial of the motion in the light of the whole record of the trial and *held*, that there was no error of law nor abuse of discretion in the denial.

A motion for a new trial of an indictment for murder was based on newly discovered evidence and was supported by four affidavits, two of which set forth evidence corroborative of the defendant's testimony at the trial, the third of which set forth evidence which would not have been admissible at the trial, and the fourth of which, by the defendant, set forth that the defendant was then able to identify a man who, he had testified at the trial, had been present at the time when the murdered person was killed and whom he had not previously identified because of fear of the results of such disclosure and fear of certain persons who had sat in the court room at the trial as spectators, and that he still was in fear and thought he should not have to risk his life in order to prove his innocence. The motion was denied. *Held,* that

(1) In passing upon the motion, the judge who heard it had the right to make use of his own knowledge of what had taken place at the trial of the indictment before him;

(2) In so far as the denial of the motion involved findings of fact, the decision of the judge was final;

(3) The disposition of the motion rested in the sound judicial discretion of the judge;

(4) There was no error nor abuse of discretion in the denial of the motion.

Upon an appeal with assignments of error following a verdict of guilty at the trial of an indictment for murder, it was *held,* that no prejudicial error nor abuse of discretion by the trial judge was shown in the circumstances

(1) In the exclusion of a certain question asked on cross-examination by the defendant of a witness for the Commonwealth, where, counsel for the defendant then having suggested the extent of the particular matter which he wished to develop, the judge permitted cross-examination of the witness to that extent, and no further exception with regard to the matter was saved by counsel, who apparently was content at the time with such ruling;

(2) In the exclusion of questions as to the nature of instructions received while on the police force by the police officer who had arrested the defendant at the scene of the murder, an important issue being whether a revolver was in the pocket of the defendant's coat at the time of his arrest, where such questions were asked of the officer on cross-examination after he had testified on direct examination that he had not searched the coat, and where he later testified on cross-examination that he knew it was important to search clothing of suspects;

(3) In the exclusion of questions, asked on cross-examination by the defendant of said police officer and a police lieutenant, as to instructions given to the officer by the lieutenant at the time of the murder, the purpose of such questions not being suggested by the defendant;

(4) In the exclusion of questions designed to elicit testimony which would be a repetition of testimony previously given in substance by the witness;

(5) In the exclusion of questions, asked by the defendant on cross-examination of a police sergeant in connection with a demonstration before the jury, to show that the witness would have noticed the presence of a revolver in the pocket of the defendant's coat, which the witness had had in his possession after the murder, the witness having testified that the difference in the weight of the coat with and without the revolver in the pocket was readily noticeable;

(6) In the exclusion of a certain question by the defendant designed to impeach a witness called by him, where the judge subsequently, no further exception being saved by the defendant, permitted cross-examination of the witness along that line without confining the defendant strictly to his rights under G. L. (Ter. Ed.) c. 233, § 23;

(7) In the exclusion of evidence that two persons had gone to a relative of the murdered man and had urged the relative to claim his estate, to be divided among the three of them, saying, "If you don't do so, you will get the same thing done to you as we did to . . . [the murdered man]";

(8) In the exclusion of a question, asked by the defendant in cross-examination of a detective who had conducted an examination of the defendant at the time of his arrest, as to why, at the close of the examination, he had asked the defendant whether he had been "well used" or not;

(9) With respect to a statement, made by the district attorney in his closing argument to the jury, concerning the "framed-up defence in this case," in view of subsequent statements by the district attorney and instructions to the jury by the judge to the effect that the district attorney's remark was not intended as a reflection upon the defendant's counsel, but was merely an argument on a question which was for the jury to decide, the defendant at no time having requested that any instructions about the matter be given;

(10) In the refusal of a request by the defendant for a ruling, "That the sex, age, disposition, courage or lack of courage, education, experience, character, intelligence and previous training of the prisoner are elements to be considered in determining whether the statements made by him at the time of his arrest, and shortly thereafter, were voluntary or involuntary," there being nothing to show that such statements had been obtained by fraud or duress, and the judge having instructed the jury that such statements were not a confession nor an admission, but that, if they were at variance with the defendant's testimony at the trial, they might be considered by the jury as bearing on the credibility of the defendant as a witness.

INDICTMENT, found and returned on September 13, 1932, charging the defendant with murder.

In the Superior Court, the indictment was tried before *T. J. Hammond*, J. The defendant was found guilty and filed an appeal with assignments of error described in the opinion.

*T. L. Thistle, (P. A. Guthrie & J. F. Thistle* with him,)
for the defendant.

*W. L. Bishop,* District Attorney, for the Commonwealth.

DONAHUE, J.   Ong Sing Ping, sometimes known as Sam
Lee, a native of China and about sixty-five years old, was
shot and killed in his laundry on Grove Street, Melrose,
about 8:45 on the evening of August 24, 1932.   The de-
fendant, who was thirty-three years old and also of the
Chinese race, was indicted for murder on September 13,
1932, and was later tried and convicted of murder in the
first degree.   His appeal brings before us on the record
fifteen assignments of error.

There was evidence which warranted the jury in find-
ing the facts which are here briefly summarized.   The
premises occupied by the deceased in the conduct of his
laundry consisted of a front room, facing Grove Street,
where customers delivered and received laundry and where
ironing was done; back of the front room was a second
room used by the deceased for living and sleeping quarters
and for other purposes, and beyond this a third room in
the rear of the building.   From this third room a door
led to a toilet from which another door gave entrance to
a room or compartment used for the storage of coke.
On the evening of the killing the front room was lighted.
The jury had a view.

The defendant, who had been out of work for six months,
left his room on Hudson Street, Boston, about six o'clock
on the evening of August 24, and at about seven boarded
an elevated train at the Essex Street station, went to
Everett and took a bus for Melrose.   At Melrose he in-
quired the way to the deceased's laundry, where he had
never been before, arriving shortly after 8:30.   He went
into the front room and finding no one there went into the
second room.   Ten or fifteen minutes later several persons
in the neighborhood heard screams in the laundry, followed
in several seconds by the sound of a shot and after another
interval of several seconds by another shot.   Shortly after-
wards the defendant came from the second room into the
front room, wearing a hat and coat, and locked the outside

door. Then he went back into the second room but in a short space of time came again into the front room without hat or coat and started ironing. A little later a customer seeking his laundry tried the door, found it locked and shook it. The defendant who was then in the second room came out. The customer from outside the door asked for his laundry and the defendant told him to "Go away"; the customer again asked for his laundry and the defendant replied, "Tomorrow; by and by." The customer asked where "Sam" was and the defendant answered, "Sam is gone home." Again the customer demanded his laundry and held his laundry check up against the glass of the door. The defendant then came and opened the door about six inches. The customer stepped to one side in front of the window and the defendant locked the door again and went back to the ironing board. A police officer in uniform named Warner then came and knocked on the door; he asked the defendant to open the door and the defendant said: "No." The officer then put his shoulder against the door and threatened to break it down if the defendant did not open and the defendant came and unlocked it. The officer asked where Sam Lee was and the defendant replied: "Don't know. Gone out." The officer pushed the defendant before him into the second room and the defendant led him into the third room where there was a gas jet burning and said: "See? Sam gone." As the officer turned to go toward the front of the laundry he heard a gurgling sound and looking saw what he took to be a bundle lying across some boards. He went over, took up a comforter and underneath was the body of the deceased on a small bed. He asked the defendant, "Who did this?" and the defendant said: "I don't know." There was a wound in the abdomen where, according to the medical examiner who performed an autopsy, a bullet had entered the body from a weapon which was discharged when pressed close against the abdomen, and a wound in the back where the bullet had made its exit. There was a wound in the left eye made when a bullet had entered from a weapon held one eighth to one fourth of an inch away and a wound in

the back of the head made when the bullet left. In the opinion of the same witness the wound through the abdomen would not cause instant death and the wound through the eye would. There were marks on the neck caused by fingernails, three abrasions on the chest, and numerous small black and blue areas and abrasions about the upper part of the back and shoulders.

The defendant was placed under arrest by Officer Warner and handcuffed. Other officers soon came and the defendant was searched by Officer Warner and Sergeant Curran, the defendant then not having on his coat. There was evidence from which it might have been found that the coat was not searched until after the defendant had been brought to the station house when there was found in the pockets of the coat a flash light, a rope twelve feet long, and various personal effects. No weapon was found on his person or in his clothing. There was evidence that just before he was taken from the laundry the defendant picked up his coat and threw it over his arm. He was led to the police car which was stopped across the street and sat on the right of the rear seat for seven or eight minutes before it was driven to the police station. He had a handkerchief in his hands. A witness testified that while the defendant was seated in the police car before it left the vicinity of the laundry he made motions with his hands, which the witness illustrated to the jury, at a time when the dome light in the rear of the car was not lighted. On cross-examination the witness was asked if he saw the defendant move his hands in a very suspicious manner and answered that he did, that he saw the defendant move his hands to one side and illustrated the movement to the jury. A few hours later a search of the police car was made and a revolver found between the seat and the back cushion, near where the defendant had sat. It was a .32 caliber Colt revolver containing six shells, two of which were empty and four loaded, the two empty shells being together in the chamber of the revolver. An expert on firearms testified that the two bullets which had been found in the laundry had been fired from cartridges containing smokeless powder and that the four loaded cartridges in the revolver which had

been found in the car were loaded with smokeless powder. He testified that the bullets had been fired from a Colt revolver of the pattern of revolver which was found in the car, and that because the bullets were so badly battered the delicate evidence on the outer surface of the bullets, which is necessary when an intimate relation between a bullet and a given firearm may be established, had been destroyed. The serial number indicated that over one hundred ninety-two thousand revolvers of that pattern had been made before that particular revolver. There was evidence that it had been sold in 1923 to a man in Providence, but no evidence of its later history. In an unlocked till or money drawer in the front room there were bills and small change amounting to not more than $10 and in a hiding place under the top of an ironing machine in the second room $116 was found. The defendant testified that three days before August 24 the deceased, whom he had known for over a year, engaged him to take charge of the laundry while the deceased went for a visit to China and had sent a letter the day before asking the defendant to come to the laundry on August 24; that when he arrived at the laundry he found the deceased in the second room talking to two Chinamen; that they talked of the matter of a sale of the laundry, of the proposed trip to China, of the deceased saving money and as to the banks he kept it in; that finally there was an argument which became excited; that the younger of the two men took hold of the deceased and asked him where he kept his money, shot him through the body and then in the head and threw him on the bed; that the other man pointed a gun at the defendant, threatened him, told him to close the front door, which the defendant did, told the defendant to say nothing about what had happened, to stay there and keep on working, and then went through a door leading to the coke room. The defendant testified that neither of the two men went out the front door. There was a doorway leading from the third room to the back yard where there was a screen door which could not be opened. The screening in that door was intact when the officers arrived. The only other door leading from the rear rooms led into an adjacent store and there was

evidence that this was locked from the other side. There was evidence that all but one of the windows in the laundry were so boarded up or screened that no one could thereby have left the premises that night. A sliding window in the coke room which was unscreened was open six or eight inches when the police officers arrived. When interrogated at the police station the defendant said that when he arrived at the laundry he did not see the deceased there; that the rear door was open and he closed it; that he then took off his coat and hat and started ironing a shirt which was on the board in the front room; that he did not see the deceased until after the officers came when the body was discovered; that he was not there when the deceased screamed and two shots were fired. He said nothing about seeing two other Chinamen in the laundry. At the trial, on direct examination, he testified that he told only a part of the story at the police station because he was afraid that the two men would come back and kill him and because his uncle was not present at the time of the examination; that he was not afraid of the police when the first officer came to the laundry but was afraid after he was handcuffed. On cross-examination he said that he did not tell the whole story at the police station because he was afraid of the two men. On redirect examination he testified that when he said to the man who came for his laundry "Sam gone home" he meant that Sam was dead.

1. The first assignment of error is based on the denial of a motion for a new trial which stated as its grounds that the verdict was against the evidence, the weight of the evidence and the law; that the judge excluded important and relevant testimony and that the district attorney presented improper arguments to the jury. The subject matter of the two grounds last stated was made the basis of specific assignments of error founded on exceptions taken at the trial which are hereinafter more particularly discussed. The defendant has argued generally that during the trial counsel for the defendant was improperly restricted in cross-examination, basing his argument not only on instances where exceptions were taken which have been made the grounds of assignments of error, but, as well, on instances

where no exception was taken. Although an assignment of error not based on an exception taken at the trial cannot as of right be presented to the full court (*Commonwealth* v. *McDonald*, 264 Mass. 324, 336) we have here considered the whole record in the light of the argument made by defendant's counsel. It is manifest that all the questions raised by the motion could have been raised at the trial. *Commonwealth* v. *Belenski*, 276 Mass. 35, 50. Such questions cannot be raised as of right on a motion for new trial, *Commonwealth* v. *Vallarelli*, 273 Mass. 240, 248, and commonly will not be considered when raised on such a motion. *Commonwealth* v. *Cero*, 264 Mass. 264, 275. The motion was an application to the discretion of the trial judge. *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 24. A thorough examination of the entire record of the trial discloses no error of law or abuse of sound judicial discretion in its denial.

2. The defendant filed a second or "Supplementary" motion for new trial which alleged newly discovered evidence and was supported by four affidavits. The denial of this motion is the basis of the defendant's second assignment of error. Two of the affidavits set forth evidence corroborative of two separate portions of the defendant's testimony, and another presented evidence which would not have been admissible at the trial. The fourth was the affidavit of the defendant which, in substance, stated that he was able to identify one of the two men who, according to his testimony at the trial, were present when the deceased was killed; that he did not tell the complete story at the police station on the night of the killing through fear and that he did not, at the trial, disclose the identity of the man he knew because of fear of death and vengeance upon his family and friends which would result from such disclosure and through fear during the entire trial of some of the Chinese who sat in the court room as spectators; that he first told his counsel that he thought he could identify one of the murderers after the jury returned its verdict, and had never told his counsel the name of the murderer whose identity he knew; that in response to the inquiry in the affidavit, "Are you now willing to disclose his identity?"

he replied that he was still in fear of his life and the lives and safety of his friends, and that when asked if he would disclose the identity of the man in court he answered that he was innocent and thought the court should not make it necessary for him to give up his life in order to prove his innocence in court. The trial judge had the right to make use of his own knowledge of what took place at the trial before him. *Commonwealth* v. *Sacco,* 259 Mass. 128, 140. In so far as the denial of the motion involved findings of fact the decision of the trial judge was final. *Commonwealth* v. *Sacco,* 255 Mass. 369, 449. The disposition of motions for new trial on the ground of newly discovered evidence rests in the sound judicial discretion of the trial judge. *Commonwealth* v. *Borasky,* 214 Mass. 313, 322. *Commonwealth* v. *Dascalakis,* 246 Mass. 12, 32. *Commonwealth* v. *Devereaux,* 257 Mass. 391, 394. We find nothing in the record which indicates the abuse of such discretion in the denial of the second motion for new trial.

3. Upon cross-examination, a witness called by the Commonwealth was asked, "What did Miss Mullane [another witness for the Commonwealth] say about the back room light?" referring to the back room of the laundry on the evening in question at and for some minutes prior to the killing. The third assignment of error rests on an exception to the exclusion of that question. Counsel for the defendant at the instance of the judge made an offer of proof that the witness "talked with Miss Mullane on two or three different occasions," and suggested that it was "important as to whether or not these witnesses talked together and agreed upon their stories." The judge stated that counsel might "examine as to that," that, of itself, what Miss Mullane said would not be competent but that inquiry might be made as to her talking over the situation with other witnesses. To this counsel replied, "Yes, sir," and proceeded to cross-examine the witness as to talking over the case with Miss Mullane. No further exception on this subject was taken. The judge permitted cross-examination to the extent suggested by counsel for the defendant who was, apparently, at the time content with this ruling. It cannot be said that

the exclusion was prejudicial to the defendant. We find no reversible error under the third assignment.

4. Officer Warner, who arrested and, with another police officer, searched the defendant in the laundry, testified at the outset of his cross-examination that during his seven years' service on the police force he had received instructions with regard to his duties, including instructions from a superior officer as to the arresting of suspects. He was then asked, "what instructions did you receive?" Counsel for the defendant offered to show that the witness was "well qualified to make an arrest, and what he knew in the performance of his duty," and later stated that the purpose of the question was "to determine what instructions and training he may have had relative to the way and manner in which he made the arrest of suspects, particularly felons, so that I may establish that in this case he did everything . . . that he was instructed to do in the line of his duty and training." The judge, after stating in substance that no limitations were put upon inquiry as to what the witness actually did in searching the defendant, excluded the question. The defendant's fourth assignment of error is grounded on the defendant's exception to the exclusion. There is a lack of clarity both in the statement of purpose and in the assignment of error. Under any interpretation of the statement of counsel which it can be said the judge reasonably should have made at that stage of the case we are of the opinion that the exclusion of the question was within his discretion and that the rights of the defendant were not prejudiced. The witness, who on direct examination had testified that he did not search the coat of the defendant, in later cross-examination testified that he knew it was important to search the clothing of suspects.

5. The arresting officer while on duty on the street received instructions by telephone from an officer at the police station and went at once to the laundry. To the exclusion on cross-examination of the question, "What instructions did you receive?" an exception was taken which is the basis of the defendant's fifth assignment of error. No suggestion of purpose was made by counsel for the defendant. *Common-*

*wealth* v. *Belenski*, 276 Mass. 35, 46. We see no ground on which the instructions received might be admissible and no harm done the defendant by the exclusion.

6. The sixth assignment of error is grounded on an exception to the exclusion of the question put to the arresting officer: "Will you agree that it is important to search the clothing of a suspect, found in the presence of a murdered man?" Counsel made offer to show that the witness would testify that it was important to make such a search for four reasons enumerated by counsel. The witness had earlier in the cross-examination testified that the defendant's coat was not searched at the laundry, and also that in his opinion it was important to search the clothing of a suspect. The extent to which the repetition of questions should be permitted was within the discretion of the judge. *Commonwealth* v. *Bosworth*, 257 Mass. 212, 214, and cases cited. There was here no abuse of discretion by the judge and no harm done to the defendant by the exclusion of the question asked.

7. The arresting officer and a police sergeant testified that when they searched the defendant in the laundry they did not search or handle his coat. Another witness for the Commonwealth testified on cross-examination that just before the defendant was taken from the laundry the sergeant had the coat of the defendant on his arm while standing on one side of the counter and the arresting officer from the other side reached over and took the coat by dragging it over the arm of the sergeant. He illustrated to the jury the manner in which he said this was done. Counsel for the defendant during the cross-examination of the sergeant placed the revolver, which had been found in the police car, in a pocket of the defendant's coat and said to the sergeant: "I want to draw that coat across your arm [doing so]. Do you feel any obstruction there?" To the exclusion of this question the defendant took an exception on which the seventh assignment of error is based. Counsel for the defendant stated to the judge that the evidence was not offered to contradict or affect the testimony of the sergeant or to contradict the testimony of the witness for the Commonwealth above referred to. He stated that it was offered to

show that if the coat had been drawn over the sergeant's arm as that witness testified and the sergeant denied, the sergeant would have noticed the pressure of the revolver. The permission to perform or make experiments or illustrations in the presence of the jury rested in the sound judicial discretion of the trial judge. *Commonwealth* v. *Snyder,* 282 Mass. 401. *Jordan* v. *Velozo,* 269 Mass. 347, 351. *Posell* v. *Herscovitz,* 237 Mass. 513, 517. *Thornhill* v. *Carpenter-Morton Co.* 220 Mass. 593, 599. *Cotton* v. *Boston Elevated Railway,* 191 Mass. 103, 107. *Commonwealth* v. *Tucker,* 189 Mass. 457, 477. We find here no abuse of such discretion. Nor can we see any harm done to the defendant. Before this episode the witness on cross-examination at the request of defendant's counsel held the coat with and without the revolver in its pocket and testified that the difference in weight was noticeable without difficulty and after the episode testified that the difference in weight was quite noticeable.

8. The eighth and the fifteenth assignments of error were not argued and were expressly waived in the defendant's brief. We have examined the record as to both exceptions and find no reversible error.

9. A police lieutenant, who had testified on direct examination that on the evening of the killing he had received at the police station a telephone call from the proprietor of a store adjoining the laundry and had sent Sergeant Curran to the scene, was asked on cross-examination by the defendant's counsel what instructions he gave the sergeant. On the defendant's exception to the exclusion of this question the ninth assignment of error is based. The question was not asked to contradict any testimony which had been given. Its purpose was not suggested and we see no harm to the defendant or reversible error in its exclusion.

10. An examination of the record discloses no ground for the tenth assignment of error which in substance asserts the refusal of the judge to permit the defendant to cross-examine for the purpose of impeachment a witness called by him. A witness called by the Commonwealth had testified that she saw only one man enter the laundry on the

night in question up to the time she heard shots fired. The defendant called a witness who was asked by defendant's counsel if the witness for the Commonwealth above referred to had told her "that two men entered that laundry before the murder happened" to which the defendant's witness replied that she could not remember. In response to further questions the defendant's witness testified that she had a conversation at her home about two weeks before the trial with a man whom she had seen sitting in the court room. She was then asked: "Did he tell you he came from my office, or was in my employ?" Upon objection the question was excluded and the defendant saved an exception. The defendant's counsel was asserting rights given by the statute which permits the party producing a witness to contradict him by proof of prior statements inconsistent with his present testimony providing the circumstances "sufficient to designate the particular occasion shall be mentioned to the witness, and he shall be asked if he has made such statements, and, if so, shall be allowed to explain them." G. L. (Ter. Ed.) c. 233, § 23. As a foundation for the later introduction of testimony of inconsistent statements the defendant as the party calling the witness had the right to "direct the attention of the witness to the specific evidence he desired to contradict, and to question him respecting only such previous statements as were inconsistent with that evidence." *Cook* v. *Farnum*, 258 Mass. 145, 147. Although, by proper inquiry inconsistent statements alleged to have been made by the defendant's witness to the man who called to see her might have been brought to her attention, what the man said to her was not material or within the provisions of the statute. At the time the question was asked the witness had testified that she could not remember that the witness for the Commonwealth whose testimony the defendant sought to contradict, had told her that two men had entered the laundry. Where such an answer is made by a witness the party calling him may not offer evidence of prior statements since such evidence is held not to be inconsistent with lack of memory. *Corsick* v. *Boston Elevated Railway*, 218 Mass. 144, 147, and

cases cited. *Bloustein* v. *Shindler,* 235 Mass. 440. *Cook* v. *Farnum,* 258 Mass. 145, 148. Following the exclusion of the question there was a discussion at the bench where counsel for the defendant contended that he should be permitted to cross-examine his witness for the purpose of impeaching her testimony later by another witness. One of the counsel for the defendant suggested that the witness should first be asked whether at a stated time she had a conversation with the witness for the Commonwealth, whose testimony the defendant desired to contradict, in which that witness said certain specified things. The judge finally said that he would permit such a question but that he did not then know how far counsel for the defendant would be permitted to go in cross-examination of his witness. To this statement and during the remainder of the examination no exception was taken and no further contention made as to the matter of cross-examination. Defendant's counsel proceeded to cross-examine the witness as to what she said in her conversation with the man who came to see her. She testified that she told the man that on the night in question she talked with the witness for the Commonwealth whose testimony the defendant sought to contradict and another girl in the vicinity of the laundry and that she thought "the girls" told her they saw two men enter the laundry. The man with whom the witness talked was not called as a witness. The judge did not confine the defendant to his rights under the statute but permitted cross-examination of his own witness. There was no error of which the defendant complained or can complain.

11. The ground of the eleventh assignment of error is the exclusion of evidence stated in an offer of proof, in substance that some weeks after the killing of the deceased two Chinamen on two occasions visited a cousin of the deceased in Westborough and demanded that he make claim to the estate of Sam Lee as sole heir and said that they would divide the estate among the three of them; that upon his refusal they threatened him and said, "If you don't do so, you will get the same thing done to you as we did to Sam Lee." The description of these two men as stated in the offer of proof

corresponded in some respects with the defendant's description of the two men he testified were seen by him in the laundry and with the description given by another witness called by the defendant of two Chinamen he testified he saw leave a bus in Melrose near the laundry on the night of the killing. It has long been the law in this Commonwealth that evidence of a confession, made out of court by a third person, of the commission of a crime with which a defendant on trial is charged, is inadmissible. *Commonwealth* v. *Chabbock*, 1 Mass. 144. *Commonwealth* v. *Chance*, 174 Mass. 245, 251. *Commonwealth* v. *Wakelin*, 230 Mass. 567, 576. *Commonwealth* v. *Sacco*, 259 Mass. 128, 140. To the effect that this is supported by the great and practically unanimous weight of authority in this country, see *Donnelly* v. *United States*, 228 U. S. 243, 273. Such evidence is held to be incompetent as hearsay, that is, because the person alleged to have made the confession cannot be subjected to cross-examination. The same reason requires the exclusion of declarations or admissions of a third party. *Commonwealth* v. *Felch*, 132 Mass. 22. *Farrell* v. *Weitz*, 160 Mass. 288. An admission by conduct of a third party is not competent evidence. *Commonwealth* v. *Robbins*, 3 Pick. 63. *Boyle* v. *Burnett*, 9 Gray, 251, 252. The trial judge committed no error of law in excluding the statements of the third parties as set forth in the offer of proof.

12. After the defendant had rested, "with the understanding" that the statement made at the police station be put in, without objection the district attorney in rebuttal introduced the stenographic record of the examination of the defendant conducted by a detective of the State police at the police station on the night of the arrest and then called the detective for cross-examination by defendant's counsel. In the course of the examination the following question was asked: "Well, if you are always friendly with suspects, and do nothing which might be objectionable, will you explain why you found it necessary, at the close of the statement, to ask him whether or not he had been well used?" This was excluded on the ground that it was argumentative in form and referred to other occasions. The defendant's exception

to the exclusion is the ground of the defendant's twelfth assignment of error. The witness had not testified that he was "always friendly with suspects" or that he had found it necessary to ask the defendant as to his treatment. We find no error in the exclusion of the question. Counsel proceeded to examine the witness as to the statement taken at the police station and no proper question was excluded. There was nothing in the stenographic record of the examination held at the police station, or in the testimony of the detective, or of the defendant himself, or of any other witness which suggests that statements of the defendant at the police station were obtained by deceit, compulsion, threat or improper treatment.

13. An exception taken during the argument of the district attorney is the basis of the thirteenth assignment of error. Defendant's counsel had argued that he claimed, not that the Melrose police had placed in the police car the revolver which was there found, but that the car had been left unattended and that there was opportunity for the men who committed the crime to come back and throw the revolver in the car. The district attorney in the course of his argument referring to these contentions made in the argument of defendant's counsel said: "I should think, gentlemen, that some people must think that you are inmates of an asylum, to think that two murderers, fleeing away, going through the window and then shutting it, and then running from the scene of their crime, would come back by and by, come back to the scene of the murder, come back into the hands of the police, come back into the crowd around there and place a gun in the police car. That is enough, gentlemen, to destroy the framed-up defence in this case of this man, enough to justify you in finding him guilty." Defendant's counsel then interrupted and said: "May I take an exception to that remark, your Honor?" A conference at the bench followed in which the judge told the district attorney that he had better withdraw the last part of the statement and that it was not for him but for the jury to say whether it was a framed-up defence. The district attorney resuming his argument to the jury said: "Of course, I want it distinctly

understood, gentlemen, that I have no reference to counsel in any way, shape or manner, in this case. I am simply mentioning that to show you and try to convince you that it is a recent contrivance, that a new idea has come into this man's head, in order to get him out of this court." The judge then said: "That is, there is no reflection or criticism of counsel, but it is an argument on a question that is for the jury to decide"; to which the district attorney responded, "That's it exactly." In his charge the judge said: " . . . in reference to the closing arguments; that is, the argument of counsel for the defendant, and the argument of the district attorney. No statements in the closing argument of either, as to questions of fact, personal views, personal convictions, or personal ideas either as to the guilt or innocence of the defendant, or as to the weight or value of a particular piece of evidence, are to be considered by you." The defendant did not at the time he took exception to the improper argument of the district attorney or either before or after the charge request that any instruction on the matter be given by the judge to the jury. (See *Doherty* v. *Levine,* 278 Mass. 418; *Commonwealth* v. *Cabot,* 241 Mass. 131.) The judge had the right to assume that the defendant was satisfied with the way the matter was left, namely, that any imputation on counsel was disclaimed (*Commonwealth* v. *Mercier,* 257 Mass. 353, 376) and the argument was left as an attack upon the credibility of the defendant's testimony that two other men participated in the murder, and upon an argument of counsel based on that testimony. On a careful examination of the record with reference to the incident we are of the opinion that the defendant was not prejudiced and that the judge committed no error of law.

14. The refusal of the judge to give the following request for instructions to the jury is the ground of the fourteenth assignment of error: "That the sex, age, disposition, courage or lack of courage, education, experience, character, intelligence and previous training of the prisoner are elements to be considered in determining whether the statements made by him at the time of his arrest, and shortly thereafter, were voluntary or involuntary." In the ordinary

usage of words, "voluntary" and "involuntary" when employed in connection with statements alleged to have been made by a defendant charged with the commission of a crime, respectively import statements made without constraint or compulsion by others, and the contrary. There was here no evidence which made the request for instructions as to a distinction between voluntary and involuntary statements applicable. The defendant did not testify that there was any speech or conduct by police officers or by any one else following his arrest or throughout his examination at the police station which coerced his will, or that any duress, deceit or compulsion of any sort was practised or exercised upon him nor was there evidence from any other source which warranted such contention. The judge in substance instructed the jury in his charge that the statement made by the defendant at the police station was not contended by the Commonwealth to be and was not a confession, that it was not to be considered an admission of anything, but that if the jury found that statements were there made at variance with testimony of the defendant at the trial, they were to be considered on the credibility of the defendant as a witness. No exception was taken to the charge. There was no error in the refusal to give the instruction requested.

*Judgment on the verdict.*