**CHIN KEE, Petitioner, Appellant,**

v.

**COMMONWEALTH OF MASSACHU-SETTS, Respondent, Appellee.**

**No. 7193.**

United States Court of Appeals
First Circuit.

Feb. 14, 1969.

Certiorari Denied June 23, 1969.
See 89 S.Ct. 2143.

John D. O'Reilly, III, Boston, Mass., by appointment of the Court, for appellant.

Richard L. Levine, Deputy Asst. Atty. Gen., with whom Howard M. Miller, Asst. Atty. Gen., was on brief, for appellee.

Before ALDRICH, Chief Judge, Mc-ENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

On September 14, 1932, appellant was arraigned in the Superior Court of Middlesex County, Massachusetts, without counsel on an indictment charging him with first degree murder. Appellant entered a plea of not guilty and requested appointment of counsel. Counsel was appointed on October 5, 1932, and on October 31 the trial began. Appellant was convicted and sentenced to death. The sentence was commuted to life and subsequently to a term of sixty-five years to life. The conviction was affirmed on appeal. Commonwealth v. Chin Kee, 283 Mass. 248, 186 N.E. 253.

In 1968 appellant sought to attack his conviction on the ground that his arraignment without counsel violated his Sixth Amendment rights. His petition was denied by the Supreme Judicial Court. Chin Kee v. Commonwealth, 1968 Mass. Adv.Sh. 571, 235 N.E.2d 787 (1968).

In May of 1968 appellant filed a petition for habeas corpus in the federal district court. The district court reviewed the record and, finding persuasive the opinion of the Supreme Judicial Court, denied the petition. Chin Kee v. Commonwealth of Massachusetts, Misc. Civil No. 68–41–M, D.Mass., Aug. 1, 1968.

Appellant, bringing this appeal from the district court's denial of his petition, rests his attack solely on the Supreme Court's decision in Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961). In *Hamilton* the defendant had been arraigned without counsel, and as a result of his entering a general plea of not guilty, the absolute rights to utilize the insanity defense, to make pleas in abatement, and to move to quash the indictment were lost. In reversing the conviction the Court held that under Alabama practice arraignment is a critical stage in criminal proceedings thus requiring appointment of counsel at that time. The Court concluded, "When one pleads to a capital charge without benefit of counsel, we do not stop to determine whether prejudice re-

sulted. * * * In this case * * * the degree of prejudice can never be known. Only the presence of counsel could have enabled this accused to know all the defenses available to him and to plead intelligently." 368 U.S. at 55, 82 S.Ct. at 159.[1]

Appellant seeks to persuade us that as in *Hamilton, supra,* arraignment is a critical stage in criminal proceedings in Massachusetts practice as it prevailed at the time of his conviction, and that being so, reversal must follow without inquiry into actual harm resulting from absence of counsel. This is the question which we left open in Macey v. Scafati, 395 F.2d 768 (1st Cir. 1968).

Appellant's argument compels us to consider the significance of arraignment under Massachusetts law prevailing at the time of appellant's conviction. The Massachusetts Supreme Judicial Court noted that, unlike the Alabama practice affecting *Hamilton, supra,* arraignment was not a critical stage in Massachusetts as far as the insanity defense and motions to quash were concerned. 1968 Mass. Adv.Sh. at 576, 235 N.E.2d 787.[2] With respect to pleas in

---

1. The factual background in *Hamilton* sheds considerable light on the Court's unanimity in refusing to require proof of actual prejudice. The petition for certiorari portrayed the defendant as "an indigent, ignorant, unstable Negro", charged with breaking into a house in the early hours of the morning with the intent to assault sexually an aged and infirm white woman.

 Court appointed counsel had represented defendant on a prior charge of "burglary with intent to steal". A new indictment added the charge "burglary with intent to ravish". Despite the fact that Alabama felony statutes referred to no such word and that the name of the intended victim was omitted, counsel deemed the arraignment a mere formality. Defendant's family had told counsel before trial that they believed defendant not to be sane; counsel made no effort to verify defendant's sanity but after trial acknowledged his belief in defendant's insanity. Trial opened with defendant's disavowal of his attorney and counsel's attempt to withdraw—all in front of the jury. The alleged victim was called by defense counsel, but, no subpoena

having been issued, this effort was abandoned. The trial occupied three and one half hours, defendant ineffectively conducting some of the examination and making his own argument, confessing that he did not understand the charge. The result was conviction and the death penalty.

The Alabama Supreme Court on coram nobis refused to set aside the conviction, saying that counsel was competent and relying on counsel's post-trial affidavit that he would not have entered any different plea than not guilty.

That the standard of possibility of prejudice from the irretrievable loss of available defenses rather than any reconstruction based on hindsight offers a more realistic approach is convincingly illustrated by the above background.

2. In its detailed analysis the court observed that not only did the insanity defense remain open on a plea of not guilty but that the Briggs law, so called, M.G.L.A. c. 123, § 100A, required in all capital and certain other cases a state-initiated examination of mental condition and report which is available to the de-

abatement the Supreme Judicial Court pointed out that they served the same purpose as motions to quash did in Alabama, attacking the "genuineness" or "validity" of grand jury procedures— such as the presence of unauthorized persons or absence of witnesses before the grand jury. The court acknowledged that a plea of not guilty waived matters in abatement, and that thereafter pleas in abatement could be filed "in the discretion of the court and not as a matter of right". Despite the technical non-appealability of a trial court ruling, the Supreme Judicial Court has considered constitutional issues raised by such pleas. *Ibid.* at 577, 235 N.E.2d 787 at 792.

Without specifying whether this diminution in ability to file pleas in abatement after a plea of not guilty had the effect of making arraignments a critical stage, the Supreme Judicial Court, after a thorough examination of the record, applying Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), declared itself convinced beyond reasonable doubt that appellant suffered no prejudice from absence of counsel at his arraignment. *Ibid* at 579, 235 N.E.2d 787.

The Supreme Judicial Court, in its effort to make a fair comparison of Massachusetts procedures and those governing *Hamilton,* understated the differences insofar as pleas in abatement (i. e., motions to quash in Alabama) are concerned. For while it is true that under both Alabama and Massachusetts practices the entry of a general plea meant that pleas in abatement could be filed subsequently only in the discretion of the trial judge, there is a crucial difference between the two practices. Under Massachusetts law, in contrast to Alabama, a defendant never possessed an *absolute* right to file a plea in abatement.[3] Instead, the acceptance of a plea in abatement was a matter for the discretion of the trial judge who could refuse to accept such a plea unless it was supported by " * * * an affidavit or other evidence." Rev.Laws of 1902, c. 218, § 62 (now Mass.Gen.Laws, c. 277, § 74). See Commonwealth v. Monahan, 349 Mass. 139, 207 N.E.2d 29 (1965); Commonwealth v. Geagan, 339 Mass. 487, 159 N. E.2d 870, cert. denied, 361 U.S. 895, 80 S.Ct. 200, 4 L.Ed.2d 152 (1959).[4] Thus, unlike the situation in Alabama, a plea of not guilty did not transfer what had been an unrestricted right to challenge grand jury procedures into a matter for the discretion of the court. The defense had been "available" only at the discretion of the court; it remained subject to its discretion—although perhaps a wider discretion.

fense. Such an examination was given appellant. 1968 Mass.Adv.Sh. at 573, 235 N.E.2d 787. Motions to quash, which in Massachusetts are directed to formal defects apparent on the face of an indictment, were not precluded by a plea at arraignment but could be made at any time up to the swearing of the jury. The court examined the indictment, as if a motion to quash had been filed, and found it valid. Moreover, appellant's counsel had filed a motion for specifications which had been granted. 1968 Mass.Adv.Sh. at 574 and 576, 235 N.E.2d 787.

3. We therefore take issue with appellant's premise as stated in his brief: "Prior to the entry of the general plea, a defendant possessed an entirely unconditional right to raise such matters in abatement."
Ala.Code, tit. 15, § 280 provides that: "No plea in abatement, or other dilatory plea to an indictment, must be re-

ceived, unless it is verified by oath, or unless its truth appears by some matter of record, or other written evidence accompanying it."
Unlike the rigorous verification requirements of Massachusetts law, *see* n. 4 *infra,* the Alabama statute requires only that a plea be sworn to and subscribed in open court. *See, e. g.,* Alexander v. State, 27 Ala.App. 593, 176 So. 835; Hagood v. State, 23 Ala.App. 138, 122 So. 299; State v. Middleton, 5 Port. 484.

4. Both Commonwealth v. Monahan, *supra,* and Commonwealth v. Geagan, *supra,* make it clear that the filing of an affidavit alone is not sufficient verification of a plea in abatement. Moreover, the quantity and quality of the supporting evidence required is a matter for the discretion of the trial court and the trial court's decision will be reviewed only for abuse of discretion.

In short, at Massachusetts arraignments, a plea of not guilty waived no right to plead insanity or attack the indictment but arguably broadened the court's prior discretion to refuse a challenge to validity of the grand jury. The area of possible prejudice is extremely circumscribed. Obviously, we are not talking about defendants whose later counsel sought to file pleas in abatement and were refused permission. Such defendants were affirmatively denied one of the benefits of counsel, and have ready recourse for relief. *Cf.* Arsenault v. Massachusetts, 393 U.S. 5, 89 S.Ct. 35, 21 L.Ed.2d 5 (1968); White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed. 2d 193 (1963). Nor are we concerned with defendants whose counsel could be shown to have failed to file pleas in abatement because they believed there was no substantive basis for such a plea. In such event defendant's rights have been intentionally waived. Fay v. Noia, 372 U.S. 391, 438, 439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 2d 1461 (1938). Nor, of course, are we concerned with defendants who, if the true facts were known, had no substantive basis to support a plea in abatement.

Our ultimate, and only concern, is thus with a defendant whose counsel believed he had, and did have, a valid basis for a plea in abatement, but nevertheless failed to seek discretionary filing because of fear that the court would exercise its discretion against him. Such counsel, who did not even try to file, would be so culpably negligent as to be guilty of malpractice. In this connection, particularly in the light of the number of motions we see zealously filed in other areas of the law with no apparent basis whatever, we see no danger that any significant number of attorneys will qualify for such condemnation by failing to file motions in which they have any confidence. Yet the area of possible prejudice is, as we see, whittled down to only those defendants so inadequately represented. For all others, the waiver effect of a plea of not guilty creates no risk. Indeed, were

this stage to be deemed critical *and* were this dimension of possible prejudice be deemed sufficient automatically to invalidate the plea, all other classes of defendants would receive an undeserved benefit at the expense of the state.

The question whether such a proceeding can be called a critical stage becomes a close one. But we assume, for purposes of this case, that it is and that the appellant should have been represented by counsel. This means that, within the teaching of *Hamilton,* we look not to actual prejudice. The key question is whether, at a stage so marginally critical, the theoretical possibility of appellant's counsel, under the specific circumstances of this case, having been somewhat tactically disadvantaged by the Massachusetts practice then governing the filing of pleas in abatement is enough to compel the granting of the writ.

*Hamilton's* prescription was stark. But it emerged from a consideration of "pitfalls * * * [which] face an accused in Alabama who is arraigned without having counsel at his side." 368 U.S. at 55, 82 S.Ct. 157 at 159. There were suggestions in the petition for certiorari that an insanity plea could reasonably have been made or at least explored; that the indictment was subject to reasonable challenge; and that a disastrous incompatibility between the defendant and his counsel might have been avoided by an earlier joint appearance before the court. Additionally, the Court referred to the use of a motion to quash to challenge systematic racial exclusion in drawing a grand jury—not an unheard of possibility in times past. In such a case a reviewing court could not say that the possibility of prejudice was so remote that it was persuaded beyond a reasonable doubt that absence of counsel was harmless error—the standard subsequently announced for certain constitutional errors in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824 (1966). This brings us to the further question: is *Chapman* applicable to the instant case?

 *Hamilton* was silent as to the role of reviewing courts in scrutinizing

the record to assess the degree of prejudice made possible by the loss of defenses, although the mandate is not infrequently referred to as a *per se* rule. Chapman makes it clear, by its citation to Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), as one area where constitutional errors are never harmless, that a *per se* rule does apply to right of counsel at trial. 386 U.S. at 23 n. 8, 87 S.Ct. 824. On the other hand, *Hamilton* specifically does not apply to proceedings short of what may be justly called a critical stage. A preliminary hearing falls short of such a stage. De Toro v. Pepersack, 332 F.2d 341 (4th Cir. 1964).[5] So do some arraignments. Hamilton v. Alabama, *supra* at 54 n. 4, 82 S.Ct. 157.

■■■ Here we confront a gray area where, so far as we have been able to ascertain, one qualified right to assert a defense has probably been made more difficult to advance by the intervening plea without counsel. We think that the spirit and teaching of both *Hamilton* and *Chapman* can be respected if, where the stage of the proceedings is only marginally or arguably "critical", a reviewing court is permitted to scrutinize the possibility of prejudice arising from the diminution of tactical alternatives available to subsequently appointed counsel and, if such possibility is found beyond a reasonable doubt merely speculative or hypothetical, to declare the absence of counsel harmless error.

This approach seems to us both to recognize the crucial role played by counsel and, at the same time, to avoid giving disproportionate weight to a discretionary pre-trial tactic not commonly utilized, where, as we have noted, *supra*, the risk of prejudice from late filing is confined to the defendant with culpably timorous counsel. The district court referred to the "common procedure" prevalent in Massachusetts in 1932 of permitting a defendant without counsel to plead not guilty. It cannot be known how many defendants state-wide have been convicted by a jury following a not guilty plea entered in the absence of counsel, but obviously all jury-convicted defendants have entered such a plea. It is conceded that in Massachusetts, until 1964, it was common to accept this plea without counsel as a means of preserving rights and minimizing inconvenience for defendants.[6] Moreover, we cannot shut our eyes to the erosion of evidence over a span of time measured by decades. To foreclose judicial consideration of the possibility of prejudice, on the reasonable doubt standard, in such circumstances as those before us, would seem to us to afford, practically speaking, a retrospective immunity bath of Caracalla proportions.

The application of the *Chapman* standard to marginally critical stage arraignments seems also to be in harmony with a number of post-*Hamilton* cases which seek to adapt the rule of that case to the realities of the varying situations of law and fact which the federal courts have confronted. Some courts have, without exegesis, declared the arraignment a non-critical stage. Some have relied on pronouncements of state courts, charac-

5. Of course a preliminary hearing may be deemed a critical stage by virtue of the gravity of consequences visited upon a defendant who acts unassisted by counsel. *See, e. g.,* White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963); Commonwealth of Massachusetts v. Arsenault, 393 U.S. 5, 89 S.Ct. 35, 21 L.Ed.2d 5 (1968) (guilty plea entered without counsel at preliminary hearing introduced into evidence at trial).

6. Our Chief Judge would add the following observation: "While perhaps it has no place in this opinion I must add that as a district judge I did the same thing. It never occurred to me that the defendant would or even could waive any matters, substantive or procedural, as a result of the plea. Indeed, to say that he did would be, precisely, depriving him of the benefit of counsel to which, by other action, I was expressly recognizing he was entitled. My sole reason for taking the plea was to avoid the necessity of the defendant's coming back on a second arraignment day. Although state procedure is, of course, different, I cannot believe the impulse towards convenience and efficiency was any less strong or less innocent."

terizing state law in general terms. Some have construed privileges to invoke a trial court's discretion, after pleas have been filed, as in practical application absolute rights. Others have looked almost exclusively to the critical rights to challenge indictments without reference to other defenses. And some may have given exaggerated emphasis to the saving graces of a not guilty plea without making further inquiry. All of these approaches evidence a grappling with the problem of reconciling the primary right to counsel with a realistic assessment that deprivation of the right had no conceivable prejudicial effect on a specific defendant. Some illustrative cases are set forth in the appendix.

If, as we think, *Chapman* is applicable to this case, can we say that we have no reasonable doubt that absence of counsel at arraignment was not prejudicial to appellant? We feel we can so say. We first discard any suspicion of systematic racial exclusion, since, as the Supreme Judicial Court noted, there were, in 1932, very few persons of Oriental ancestry in the area from which the grand jury was drawn. We then must acknowledge that appellant's lawyer did not conceive of his court appointment as a perfunctory one. Six days after he was appointed he filed no fewer than six motions—for particulars, for a copy of the autopsy report, for preserving the scene of the killing, for a transcript of statements of appellant, for evidence and names of witnesses before the grand jury, for inspection of government exhibits. Among several motions which were allowed was that part of one motion which sought the names of witnesses before the grand jury. Counsel was then able to ascertain that witnesses appeared before the grand jury and under what conditions. The docket reveals that, during the five day trial, counsel on three days caused witnesses to be summoned at the expense of the Commonwealth. Counsel followed the case to the end, succeeding in achieving commutation of the death sentence. The Supreme Judicial Court of Massachusetts was able to say that he "acted diligently and competently before, during, and after trial." We do not think these were idle words. Our own scrutiny corroborates this judgment. There has been no suggestion, at the time or since, that there was any defect in the composition of or procedures before the grand jury.[7]

Our conclusion that we believe beyond a reasonable doubt that there was no possibility of prejudice is not based on an absence of showing of prejudice. It is based on concrete evidence in the record that counsel was aggressive and alert, that he knew how, to frame requests to the court, that he was not reluctant to force rulings from the court, and that he obtained the names and addresses of witnesses who had testified before the grand jury. There still, of course, remains the possibility that counsel, even though his client's life was at stake, was dissuaded from filing a belated appeal to the trial court's discretion challenging the validity of the grand jury. This possibility does not in our opinion rise to the level of that kind of doubt which, as judges instruct juries, would cause reasonable men to hesitate in making an important decision in their own lives. We therefore believe that the burden imposed on the Commonwealth as the beneficiary of the error has been sustained.

Affirmed.

## APPENDIX

Post-*Hamilton* Cases in Federal Courts of Appeals

Stith v. United States, 124 U.S.App. D.C. 81, 361 F.2d 535 (1966); Barnett v. United States, 123 U.S.App.D.C. 38, 356 F.2d 791 (1966); Anderson v. United States, 122 U.S.App.D.C. 377, 352 F.2d 945 (1966); McGill v. United States, 121 U.S.App.D.C. 179, 348 F.2d 791 (1965) [relied on by above three cases; declared that F.R.Crim.P. 12(b) (3) in "lore" has been and henceforth in

---

7. We say this not only in the light of action taken at the time, but of a very recent supplying to appellant of the list of witnesses before the grand jury.

**16**

"law" would be construed as giving mandatory not discretionary post-plea motion rights to a criminal defendant]; United States ex rel. Machado v. Wilkins, 351 F.2d 892 (2d Cir. 1965) [California arraignment described as a noncritical stage]; United States ex rel. Caccio v. Fay, 350 F.2d 214 (2d Cir. 1965) [one ground for affirmance of conviction was that arraignment in New York was not a critical stage because a defendant could thereafter move against an indictment; two state cases relied on People v. Zizzo, 235 N.Y.S.2d 652 (Sup.Ct.Crim.T.1962) and People v. Dolac, 160 N.Y.S.2d 911, 3 A.D.2d 351 (1957) indicated that while certain motions against the indictment are required to be made at arraignment, and post-arraignment motions are within the discretion of the court, there is no doubt that a court would have permitted them]; McConnell v. United States, 375 F.2d 905 (5th Cir. 1967) [a plea of not guilty with leave to attack the indictment was held to be protected against waiver of "a substantial class of motions"; the plea of not guilty had been entered in the absence, but with the consent of counsel]; Vitoratos v. Maxwell, 351 F.2d 217 (6th Cir. 1965) [stated that Ohio arraignments were not always critical, that post-plea appointment of counsel placed a defendant "for practical legal purposes" in a pre-plea position, citing Dean v. Maxwell, 174 Ohio St. 193, 187 N.E.2d 884, 5 A.L.R.3d 1263 (1963), which, construing a statute giving discretion to courts to allow a post-arraignment change of plea, said that change of counsel would undoubtedly be considered adequate grounds for change of plea and that refusal to allow a change of plea would be reviewable. Ohio law also stated that while a plea waives an attack on an indictment, appointment of counsel provides an occasion to file exceptions to an indictment]; Madison v. Tahash, 249 F.Supp. 600 (D.Minn.1966), aff'd 359 F.2d 60 (8th Cir. 1966) [took cognizance of a defendant's ability, under Minnesota law, to challenge an indictment after plea, with the court's indulgence; conceded that challenge to personal jurisdiction of defendant or objection to delay in arraignment must theoretically precede a plea, but stated that these rights were not irretrievably lost since the Minnesota Supreme Court has said that such matters can be brought up later, citing Minnesota opinions criticizing counsel for not pursuing such points].

A few cases have apparently rested on the proposition that a not guilty plea preserves adequate scope for subsequently appointed counsel. *See, e. g.,* Black v. United States, 348 F.2d 159 (9th Cir. 1965); Johnson v. United States, 333 F.2d 371 (10th Cir. 1964); Marshall v. United States, 321 F.2d 897 (10th Cir. 1963).