**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Joseph BARSON, Defendant-Appellant.
No. 26660.**

United States Court of Appeals,
Fifth Circuit.

Nov. 6, 1970.

Daniel S. Pearson, Robert C. Josefsberg, Pearson & Josefsberg, P. A., Miami, Fla., for appellant.

Lloyd G. Bates, Jr., Asst. U. S. Atty., William A. Meadows, Jr., U. S. Atty., Miami, Fla., for appellee.

Before PHILLIPS,* BELL and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

We review on direct appeal conviction and sentence after trial by jury of knowingly making false statements to a federal savings and loan association. Title 18, U.S.C., Section 1014.[1] Appellant asserts two grounds of error on appeal: (1) the district court's denial of appellant's motion for examination of the grand jury testimony of three government witnesses, after their direct testimony at trial, for purposes of cross-examination; and (2) the district court's admission into evi-

---

* Honorable Orie L. Phillips of the Tenth Circuit, sitting by designation.

1. The indictment was in eight counts; Barson was convicted under 5 counts, 2–6 inclusive, and acquitted as to the remaining counts, Counts 1, 7 and 8.

On Count 2 the court imposed a fine of $2000.00 with probation for three years conditioned upon payment of the fine; concurrent and identical probationary terms were imposed under Counts 3, 4, 5 and 6.

dence of business records produced by a person who was not the present custodian of those records.

The facts are not in serious dispute. In 1964 appellant, as president of Parkview Construction Company, (Parkview) asserted in a document entitled "Contractor's Affidavit for Final Payment" that all lienors (subcontractors) and suppliers of labor and materials for specified residences had been paid, in order to influence Dade Federal Savings and Loan Association (Dade Federal) to make final payments of construction loans to the company. In fact there were outstanding unpaid bills on the specific jobs referred to in the indictment. The only real issue at trial was whether appellant acted with a specific intent to mislead, deceive or cheat for the purpose of financial gain. Appellant's defense was largely a contention that he as president of a large construction company could not be charged with knowing, with respect to specific residences, whether there were bills owing to materialmen at the time when the final payment of the loan was applied for and made.

Two of the government's witnesses were Bernard Herris, the office manager at the time of the alleged false statement, and Norman Rachlin, the company's accountant. The false statements were made in early 1964. Grand jury testimony was taken in 1966, eighteen months prior to the trial. At the conclusion of Herris' testimony at trial, and prior to the completion of cross-examination, appellant moved for the production of the witness' grand jury testimony. The district court denied appellant's motion, but agreed to inspect the grand jury testimony in camera, treating it as a special case because the witness was from out of town. After inspection the court concluded there was no inconsistency between Herris' trial testimony and his grand jury testimony. On that basis he refused to require disclosure of the grand jury minutes.

Appellant made similar demands at the close of the direct examination for inspection of the grand jury testimony of the accountant Rachlin and of Laurant Wheldon, the F.B.I. agent who led the investigation of Parkview's and Barson's affairs. As to these witnesses the court refused to inspect their grand jury testimony in camera, and likewise refused to make it available to appellant without prior court inspection. Appellant contends denial of these motions constituted reversible error.

Appellant also complains that the "Contractor's affidavits for Final Payment" containing the alleged false statements should not have been received in evidence. The former official of Dade Federal through whom these documents were admitted testified that they were in his control in 1964 and were made under his supervision and in the regular course of business. However, at the time of trial the witness was no longer employed by Dade Federal and had not been so employed for five years.

## INTRODUCTION OF BUSINESS RECORDS

The several "Contractor's Affidavit for Final Payment", containing the alleged false statements, were introduced through a witness who supervised their making and was custodian of them at the time they were executed. He testified that they were made in the regular course of the association's business and that he left the file such as it was when he left the employment of the association. The testimony on its face satisfies the requirements of the Federal Business Records Statute, Title 28, U.S.C., § 1732, for admission of business records. However, appellant argues that implicit in the statute is the requirement that the person producing the records be the present custodian of them.

The Second Circuit has held that the actual custodian need not testify where the requirements of the statute have been satisfied. United States v. Dawson, 2 Cir. 1968, 400 F.2d 194. Cf. United States v. Grow, 4 Cir. 1968, 394 F.2d 182; Carroll v. United States, 9 Cir. 1963, 326 F.2d 72. We believe that

the view of the Second Circuit is sound and we follow it here and conclude that the point is without substance.

## DISCLOSURE OF GRAND JURY TESTIMONY

Appellant maintains that under Dennis v. United States, 1966, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973, a showing of "particularized need" is no longer required for inspection of grand jury testimony.[2] The D.C. Circuit and the Second Circuit have so held with respect to government witnesses. Harris v. United States, D.C.Cir. 1970, 435 F.2d 74; Allen v. United States, D.C.Cir. 1968, 390 F.2d 476; United States v. Youngblood, 2 Cir. 1967, 379 F.2d 365. The Fifth Circuit, however, has previously rejected this position. White v. United States, 5 Cir. 1969, 415 F.2d 292; James v. United States, 5 Cir. 1969, 416 F.2d 467; Stassi v. United States, 5 Cir. 1968, 401 F.2d 259. We do not depart from that view here.

The First Circuit has read Dennis to hold that cross-examination is particularized need. Schlinsky v. United States, 1 Cir. 1967, 379 F.2d 735. The Tenth Circuit in a case involving a fourteen month delay between the government witness' grand jury testimony and his court appearance found Dennis to be controlling and granted defendant's motion for production of the grand jury testimony Cargill v. United States, 10 Cir. 1967, 381 F.2d 849. In the instant case the delay was eighteen months.

In Menendez v. United States, 5 Cir. 1968, 393 F.2d 312, we commented that in deciding whether a case has been made for disclosure of grand jury testimony, it is the better practice for the trial judge to inspect the grand jury testimony in camera. In Nolan v. United States, 5 Cir. 1968, 395 F.2d 283, while reiterating the traditional notion that

disclosure of grand jury testimony is largely a matter of trial court discretion, we framed the bounds of that discretion in terms of the need for secrecy. There we stated that the motion for disclosure should be granted where there is little need for maintaining secrecy. In James v. United States, supra, we affirmed the denial of access to grand jury minutes where the trial court had reviewed the minutes in camera and had found no inconsistencies in the testimony. In Posey v. United States, 5 Cir. 1969, 416 F.2d 545, we also affirmed the denial of access to grand jury minutes; however, in that case the government had disclosed, in compliance with the Jencks Act, all statements it had received from the witnesses in question. The defendants in Posey were tried for violation of federal civil rights statutes in the murder of three civil rights workers near Philadelphia, Mississippi in June 1964. To a considerable degree, the emphasis in Posey is in terms of the need for secrecy (or non-disclosure) to protect the lives and safety of witnesses before the grand jury in the tense circumstances involved in that particular prosecution. Considering the totally different situations presented, problems of secrecy vis a vis disclosure involved in Posey have slight application here.

The policy of protecting individuals who have given information to the grand jury with respect to the commission of crimes is a wise one. But once the individual has been called as a witness at trial and his testimony made public, this principle in the run of the mill case is of slight if any weight. If the statements to the grand jury are consistent with the witness' testimony at trial the grand jury testimony is no longer secret. On the other hand, if the grand jury testimony is inconsistent with the testimony given at trial, then

---

2. This concept of disclosure has been adopted by the ABA project on "Minimum Standards for Criminal Justice" (Tentative Draft), standards relating to discovery and procedure before trial, Section 2.1(a) (iii), page 13, which recommends that the prosecutor should be required to disclose those portions of grand jury minutes containing testimony of the accused and relevant testimony of persons whom the prosecuting attorney intends to call as witnesses at the hearing or trial.

fair play seems to dictate that the defendant be allowed use of the grand jury minutes for impeachment purposes, unless there is a compelling need for secrecy to protect individuals or in the aid of national security. Here the appellant seeks only the witnesses' grand jury testimony pertaining to the subjects testified to at trial. There is no suggestion that secrecy is necessary here to protect any individuals or the national security and there could be none. Neither does the government deny that the testimony of the witnesses in question was central to the government's case in chief.

■ *Menendez,* supra, holds only that it is the better practice for the judge to inspect the grand jury minutes in camera when a motion for their production is made. We think, however, that under the circumstances as they existed at this trial, after one witness' testimony had been examined in camera by the court, it was arbitrary and an abuse of discretion to refuse—without assignment of any reason other than delay of the trial's conclusion—to inspect in camera the testimony of the other two witnesses after they had testified for the government.

We intend in making this holding to leave standing without impairment the rule heretofore prevailing in this Circuit that a defendant is not entitled to inspect grand jury minutes as a matter of right. We simply hold that in this case we can find no discretionary basis for the trial judge to make a distinction between production of Herris' grand jury testimony for in camera inspection which he required, on the one hand, and production and in camera inspection of the grand jury testimony of the other two central government witnesses, which, on the other hand, he refused to require. The witnesses were all key ones, of substantially equal importance to the government's case, and the reasons impelling a decision to require pro-

duction and inspection as to the one should have impelled the same ruling as to each of the other two. In each instance, after the witness had offered testimony damaging to the defendant as to events of four years earlier, the motion was made for production and inspection of grand jury testimony given 18 months prior to trial as to the same subject matter. Need for secrecy was absent in each instance. In the absence of Jencks Act statements no other check on the memory or veracity of the respective witnesses was available. Counsel's or court's in-court examination of grand jury minutes, similar to examination of Jencks Act material may sometimes be time consuming, but time spent is not a weighty factor in balancing considerations required to provide a fair trial to an accused.

We make the following parenthetical observation. Ordinarily, with advance notice that a request for production and inspection will be made at the close of the witness' direct examination, it will be feasible for the trial judge to compare the witness' answer with the grand jury minutes as the examination proceeds and be ready to rule when the witness is tendered for cross-examination. No time is then lost.[3]

■ Our holding then, limited to the peculiar factual situation before us, is that abuse of discretion and consequent error occurred in this respect in the trial of this case. Perhaps we should add for clarity that our discussion presupposes the existence of grand jury minutes. Neither Rule 6, F.R.Crim.P., nor any decided case in this Circuit requires that testimony before a grand jury be reported. See United States v. Harper, 5 Cir. 1970, 432 F.2d 100.

In deciding the appropriate form of relief to give effect to our decision, we have considered several alternatives.

---

3. The writer during his years as a district judge successfully followed this exact procedure in several trials without causing any significant time lapse. It is akin, in practice, to the method used in the Episcopal Church, of listening to services while following them by eye in the Book of Common Prayer.

We believe that in this stage of the litigation, months after trial, remanding for an in camera comparative review of the grand jury testimony and the trial testimony by the trial judge would not suffice to protect the rights of the appellant. We also reject a view that the refusal of the trial judge to inspect the grand jury testimony of the witnesses is per se prejudicially harmful to the appellant. This is so because it is not the refusal to inspect the minutes but rather the lack of access to relevant impeaching material which creates the possible prejudice.

■ A practical approach which will give due regard to the rights of the appellant, will likewise accord to the government an opportunity to preserve intact a fair conviction if no prejudice is shown, and which may thus avoid the necessity of another trial, is suggested by the remand procedure to weigh the effect of electronic surveillance on Fourth Amendment rights adopted by the Supreme Court in Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). We adapt the *Alderman* procedure to our circumstances and remand to the district court with directions to require production to the appellant of the grand jury testimony of the two witnesses Rachlin and Wheldon. Thereafter on reasonable notice an adversary hearing shall be held by the district court to determine whether prejudice resulted to the appellant from the lack of opportunity to use the grand jury minutes at trial. The district court shall make and certify to us within sixty days from the date of our mandate its findings of fact and conclusions of law thereon, together with a transcript of said hearing. Our determination as to whether to affirm the judgment below or to reverse and remand for new trial will follow such certification. Jurisdiction of this appeal is retained in this Court during the limited remand for the stated purpose.

Remanded for further proceedings consistent herewith.