COMMONWEALTH *vs.* BENJAMIN A. DE CHRISTOFORO.

Middlesex. January 4, 1971. — December 7, 1971.

Present: TAURO, C.J., CUTTER, SPIEGEL, REARDON, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Practice, Criminal,* Disclosure of evidence before grand jury, Argument by prosecutor, Mistrial, Judicial discretion, Charge to jury, Requests, rulings and instructions, Capital case, Fair trial, New trial. *Error,* Whether error harmful. *Constitutional Law,* Due process of law.

Denial of motions by the defendant in a criminal case to inspect grand jury minutes of testimony of a police officer and alternatively that the judge make an in camera inspection of such minutes was not error under the rule that the defendant must show a "particularized need" to see the grand jury minutes where, although the defendant contended that testimony given by the officer at the trial was in two respects inconsistent with prior statements made by him, in neither instance was the alleged prior inconsistent statement claimed to have been made as part of the officer's grand jury testimony and the defendant did not show that the grand jury minutes would cast further light as to either of the alleged inconsistencies or that the grand jury testimony might in any other way be inconsistent with the officer's testimony at the trial. [534-536] TAURO, C.J., and SPIEGEL, J., dissenting.

A mistrial of a murder case was not required where improper remarks of the prosecutor in closing argument, when he said .that the defendant and his counsel, while stating that they hoped the jury would find him not guilty, in the prosecutor's belief hoped that the jury would find him guilty of something less than first degree murder, and when the prosecutor stated his personal belief of defendant's guilt, were cured by an instruction to the jury specifically covering the first objectionable remark and a general admonition by the judge that counsel in their closing arguments "very often became overzealous" and "closing arguments are not evidence for your consideration," and where the remarks of the prosecutor were insignificant and harmless when viewed in the context of the great weight of evidence of guilt [536-539]; the improper closing argument was not aggravated by the jury's knowledge that a codefendant had pleaded guilty [539]. TAURO, C.J., and SPIEGEL, J., dissenting.

Assignments of error based on the judge's failure to give requested instructions in a criminal case were without substance where the judge's charge adequately covered the subject matter of the requests. [539-540]

Any error in allowing, on cross-examination of a character witness for the defendant at the trial of a criminal case, questions whether the witness's opinion of the defendant would be detrimentally affected by certain assumed facts about him was harmless where such questions merely stated the prosecution's theory, with which the jury were already familiar, of the defendant's role in the charged offence and the witness gave negative answers to both questions. [541]

G. L. c. 265, § 2, establishing procedure for having the jury determine in a single verdict both guilt and punishment for first degree murder, is not violative of the Fifth and Fourteenth Amendments to the United States Constitution. [541]

Statement as to the trial judge's functions in dealing with a motion for a new trial in a capital case, and this court's review of his action. [542–543]

Following a conviction of first degree murder of one found shot to death in an automobile in which the defendant and two other men were riding, there was no abuse of discretion in denial of a motion for a new trial grounded on newly discovered evidence and supported by affidavits, containing much hearsay, to the effect that the defendant was in the automobile only because he had been offered a ride home therein, that a derringer found in the automobile belonged to the victim, that prospective defence witnesses did not testify because of a threatening telephone call, and that the defendant fled and went into hiding after the crime only because he was afraid of one of the men who had been riding in the automobile. [541–543]

INDICTMENTS found and returned in the Superior Court on May 10, 1967.

The cases were tried before *Sullivan, J.*

*Manuel Katz* for the defendant.

*John F. Mee,* Assistant District Attorney, for the Commonwealth.

REARDON, J. This is an appeal by the defendant under G. L. c. 278, §§ 33A–33G, from his conviction for first degree murder in the Superior Court. The jury, which unanimously recommended that the death penalty not be imposed, also found the defendant guilty of illegal possession of firearms. The case comes to us on a transcript of the proceedings below, a summary of the record, and the defendant's assignment of errors.

The following facts are undisputed. About 3:55 A.M. on April 18, 1967, a car in which the defendant and three

others were riding was stopped in Medford by two police
officers. Shortly thereafter the officers discovered that the
occupant of the right hand side of the front seat was dead,
having been shot once in the right side of the head and
three times in the left side of the chest. The officers also
discovered an unfired derringer on the floor of the car be-
hind the driver's seat, and a .38 special caliber Smith &
Wesson revolver, which had been fired once, on the rear
right hand seat. A pathologist later estimated that the
deceased, identified as Joseph Lanzi, died in the car some-
time between 3 and 4 A.M. from the wounds described above.
The head wound had been inflicted by the Smith & Wesson
revolver and the chest wounds by a Harrington & Richardson
revolver which was discovered sometime afterward buried
in the vicinity of where the car stopped. Before the officers'
suspicions were aroused, however, both the defendant, who
had been sitting behind the driver in the back seat, and the
driver, one Carmen Gagliardi, had left the scene. The other
occupant, Frank Oreto, was arrested by the officers after
their discovery that the fourth man in the car was dead.

Indictments for murder in the first degree and illegal
possession of firearms were returned against Gagliardi,
Oreto, and the defendant. On October 26, 1967, Oreto, the
only one in custody, pleaded guilty to second degree mur-
der and the gun charges. The defendant, against whom an
F. B. I. warrant for unlawful flight was lodged in April, 1967,
was apprehended by the F. B. I. in November, 1968, at his
grandmother's house, where he had been living continu-
ously since the incident. Gagliardi and the defendant were
brought to trial together but only the defendant's case went
to the jury. At the conclusion of all the evidence Gagliardi
pleaded guilty to second degree murder and the firearms
charges, and his pleas were accepted.

The Commonwealth, conceding that it was the other
two occupants of the car who fired the actual shots, relied
on circumstantial evidence to connect De Christoforo in a
joint venture with them to kill Lanzi. Evidence was in-

troduced through Officer Carr, one of the two policemen
who stopped the car, that the defendant gave a false name
when they asked his identity. He also allegedly told them
that the man in the front seat, who the officers at first
thought was asleep, was named "Johnny Simeone," that
he had been involved in a fight in Revere and that they were
taking him to the hospital. The defendant's immediate
flight from the authorities and subsequent concealment was
cited by the prosecution as evidence of guilt.

In addition to efforts to impeach the testimony of Of-
ficer Carr, counsel for De Christoforo called only character
witnesses and the defendant's grandmother. Although he
stated in his opening address to the jury that he intended to
prove that the defendant was in the car only because he was
being given a ride home from "The Attic," a bar in which
he worked, he introduced no evidence to support this theory.
He repeated in his closing argument that there were many
reasons consistent with innocence to explain the defendant's
presence in the car, including his being given a ride home.
Similarly, no evidence substantiated the suggestion in the
opening that "certain pressures" other than consciousness
of guilt explained the defendant's flight and concealment.

We treat with several issues raised by the defendant.

1. The defendant contends it was error to deny his mo-
tion to inspect the minutes of the testimony of Officer Carr
before the grand jury. Two motions to inspect the grand
jury minutes, one with respect to each indictment, were
filed before trial and were denied at that time without preju-
dice to their renewal. During cross-examination of Of-
ficer Carr, the defendant renewed his motions with respect
to Carr's grand jury testimony and moved in the alternative
that the judge make an in camera inspection of the minutes.
The judge denied all the motions.

In a number of recent decisions we have held that a judge
is not required to grant such motions unless the defendant
establishes a "particularized need" to see the grand jury
minutes involved. *Commonwealth* v. *Ladetto*, 349 Mass.
237, 244–245. *Commonwealth* v. *Doherty*, 353 Mass. 197,

209–210. *Commonwealth* v. *Carita*, 356 Mass. 132, 141–142. *Dennis* v. *United States*, 384 U. S. 855, 870. The judge properly applied the rule laid down in these decisions in denying the defendant's motions. Although the defendant contended that in two respects the testimony given by Carr at the trial was inconsistent with prior statements made by him, in neither instance was the alleged prior inconsistent statement claimed to have been made as part of testimony before the grand jury. In one instance the defendant pointed out an inconsistency between Carr's testimony at the trial and his testimony at an earlier probable cause hearing in which Oreto was the defendant.[1] He made full use of this inconsistency in an attempt to impeach Carr's testimony at the trial. In the other instance the defendant claimed an inconsistency between Carr's police report, made shortly after the incident, and his testimony at the trial. As to the events involved in the testimony, Carr's testimony on this point was supported by the unchallenged testimony of Officer Brady who was with Carr when the events occurred. We conclude that there was no inconsistency between Carr's testimony and his report which he clarified at the trial. The defendant did not show that the grand jury minutes would cast further light as to either of the alleged inconsistencies (compare *Commonwealth* v. *Gordon*, 356 Mass. 598, 602–603) or that the grand jury testimony might be in any other way inconsistent with Carr's testimony at trial. *Commonwealth* v. *Otero*, 356 Mass. 724. In these circumstances there was likewise no need shown for the trial judge to inspect the minutes in camera himself. *Commonwealth* v. *Cook*, 351 Mass. 231, 233. *Commonwealth* v. *Doherty*, 353 Mass. 197, 210.

The defendant urges that we review and reconsider our holdings in the recent cases cited above which require a showing of a "particularized need" before being permitted

---

[1] At the trial Carr stated that the defendant told him the false story about the dead man in the car, whereas at the probable cause hearing he attributed the story to Oreto.

access to the grand jury testimony of a witness who becomes a witness at the trial of an indictment returned by the grand jury. We recognize the difficult burden which this rule places upon a defendant seeking to impeach such a witness on the basis of inconsistencies between his grand jury testimony and his trial testimony. It may be desirable that we give further consideration to this rule. However, it is not appropriate to do so on the limited record of the case before us.[2] Such a change, if any, might more appropriately be accomplished for prospective application by exercise of the rule making power of this court. In this particular case the defendant is not precluded from seeking relief by way of a motion for a new trial at the hearing on which he may, by proper action, compel the production of Officer Carr's grand jury testimony for determination by the trial judge whether such testimony was in any way inconsistent with his testimony at the trial. *Earl* v. *Commonwealth*, 356 Mass. 181.

2. The defendant moved for a mistrial at the conclusion of the prosecutor's closing argument because of certain remarks in that argument. He claims also that the judge's instructions to the jury did not adequately cure the prejudicial effect of these remarks.

The defendant is quite justified in objecting to certain portions of the prosecutor's closing argument. It was clearly improper for the prosecutor to state, "They [the

---

[2] The defendant as the appealing party has the burden of presenting to this court a record on appeal which shows that he was prejudiced by an error committed by the trial court. *Commonwealth* v. *Klangos*, 326 Mass. 690, 691. The record before us contains no portion of the grand jury minutes or any other information concerning the testimony given by Carr before the grand jury. The minutes are not incorporated in the record in any way. There is nothing to indicate that the defendant availed himself of any of the several methods open to him of having the minutes produced in court for marking, identification and incorporation in the record in connection with his exceptions to the denial of his motions with respect to the minutes. We cannot speculate on what the minutes contain or on whether they contain anything which might have been helpful to the defendant. The defendant has not sustained the burden of furnishing us with a record showing that he was prejudiced by the judge's action on his motions to inspect the grand jury minutes and his alternative motion that the judge inspect the minutes in camera.

defendant and his counsel] said they hope that you find him not guilty. I quite frankly think that they hope that you find him guilty of something a little less than first-degree murder." It was further improper for the prosecutor to state at another point his personal belief of the guilt of the accused. Am. Bar Assn. Canons of Professional Ethics, Canon 15. *Commonwealth* v. *Mercier*, 257 Mass. 353, 376–377. *Commonwealth* v. *Cooper*, 264 Mass. 368, 374. *Greenberg* v. *United States*, 280 F. 2d 472, 474–475 (1st Cir.). *Harris* v. *United States*, 402 F. 2d 656, 658–659 (D. C. Cir.).

The prosecutor's argument as a whole, however, did not require a mistrial. The judge acted properly within his discretion in denying a mistrial and in relying on curative instructions to erase the error. *Commonwealth* v. *Bellino*, 320 Mass. 635, 644, and cases cited. The judge adequately guarded the defendant's rights in each instance.

Counsel immediately objected to the first statement cited above. Although the transcript at this point is not clear,[3] the judge was later at pains to point out that he recognized at the time that the argument was improper. The record suggests, as the judge said, that his statement to this effect was not heard over defence counsel's expostulation. In addition, the judge explicitly stated later that he would have given immediate instruction to the jury to disregard the comment if defence counsel had asked for one. No such motion was made. In the absence of a suitable request the defendant cannot now successfully argue that an immediate instruction to the jury was necessary to erase the prejudicial effect of the remark. We suggest, however, that in many instances it may be more effective for the judge to give immediate instructions.

After the closing arguments the judge declared his willingness to include in addition to his general charge on closing arguments of both counsel a specific reference to whatever

---

[3] The transcript shows that the judge was recorded as saying "No" in what we interpret as agreement with defence counsel's statement, "That is not fair argument."

remarks the defendant thought were unduly prejudicial. In adequate compliance with a written request for instructions about this first objectionable remark submitted by counsel for the defendant the judge specifically covered the subject in his charge. Although the language he used was less emphatic than that requested by the defendant, who took exception to it, it was sufficient to safeguard the defendant's rights. *Commonwealth* v. *Devlin,* 335 Mass. 555, 568–569. *Commonwealth* v. *Gordon,* 356 Mass. 598, 604.

Counsel for the defendant did not object at the time to the prosecutor's statement of his personal belief in the guilt of the accused. He did mention it, however, in his motion for a mistrial, and by implication at least requested a specific instruction on it. Nevertheless, his exceptions to the judge's charge were too vague to make clear to the judge that there was objection to the judge's refusal to allude to that comment in particular in accordance with a written request to this effect.[4] Compare *Commonwealth* v. *Cabot,* 241 Mass. 131, 151. In view, however, of our obligation in capital cases to examine the whole case (G. L. c. 278, § 33E), we have considered the effect of this comment in light of the entire proceedings (cf. *Patriarca* v. *United States,* 402 F. 2d 314, 322 [1st Cir.]) and particularly in the light of the judge's general admonition that counsel in their closing arguments "very often become overzealous. Closing arguments are not evidence for your consideration." We feel this instruction was adequate. As the judge pointed out, reminding the jury of an improper remark, no matter what the purpose, might tend to emphasize it.

---

[4] Counsel for the defendant excepted "to the Court's failure to give the requested specific instructions to the jury concerning the statements of the District Attorney in his closing. And, in the alternative, I take an exception to the failure to specifically instruct the jury that the District Attorney's statement, which statement has been discussed with the Court and which is made a part of the record [to the effect that defence counsel hoped the jury would find the defendant guilty of a little less than first degree murder], in the proposed Request for Instructions. [*sic*] Exception is to the refusal to specifically instruct the jury that those statements made by the District Attorney were improper and should be disregarded by them."

The defence has contended here that the improper argument was aggravated in its effect because of the jury's knowledge that the codefendant had pleaded guilty. This premise is not valid, because the codefendant's guilty plea was in no way inconsistent with the defendant's presentation of his defence to the jury. Although the defendant did not testify, his attorney represented in his opening and closing statements to the jury that the defendant was in the murder automobile but was there innocently and was in no way involved with the killing. The jury, upon learning of the guilty plea, then knew that at least one other occupant of the vehicle had admitted criminal responsibility for the murder. It is not logical to conclude that the jury would accept any implied argument of the prosecutor that, because one of the men whom the defendant blamed for the murder had pleaded guilty, the defendant was any less firm in his assertion that he himself was not guilty of any crime whatsoever.

The improper argument must also be viewed in relation to the weight of the evidence of the defendant's guilt. The case against the defendant was an extremely strong one. It is not probable that the jury drew from the argument the subtle inferences now suggested by the defence. In any event, the remarks of the prosecutor were insignificant and harmless as viewed in the context of the great weight of evidence of guilt.

3. Assignments of error based on the judge's failure to give requested instructions are without substance. Three requested instructions dealt with the inference of innocence which the jury must draw from evidence which is consistent with both guilt and innocence. Although they accurately stated relevant law, the judge was not required to instruct the jury in the terms urged by the defendant. He adequately covered the substance of the requested instructions. *Commonwealth* v. *Mannos*, 311 Mass. 94, 113. *Commonwealth* v. *Aronson*, 330 Mass. 453, 458. *Commonwealth* v. *Monahan*, 349 Mass. 139, 170–171. He instructed the jury

fully and accurately on the presumption of innocence and
the burden of proof which the Commonwealth must sustain.
He specifically cautioned them not to base their decision
on suspicion or conjecture and further instructed them on
the proper treatment of circumstantial as opposed to direct
evidence in assessing guilt.

A final requested instruction was to the effect that
"[f]light does not necessarily reflect feeling of guilt." The
judge properly instructed that evidence of the defendant's
actions on the scene, his flight, and later concealment,
could be taken "as an admission of guilt." He cautioned
them in addition, however, that "common fairness insists
that before you draw an inference of guilt for the crime of
killing, you should be satisfied that these acts or words
were at least a part of the motive or cause of the conscious-
ness of guilt which caused these acts or words to be spoken."
The defendant could not require more. "Having given the
jury correct rules for their guidance . . . [the judge] is
not required to go further and discuss possible findings of
fact upon which a defendant might be acquitted." *Com-
monwealth* v. *Greenberg,* 339 Mass. 557, 585. *Common-
wealth* v. *Payne,* 307 Mass. 56, 58. In addition, the possi-
bility that the defendant's flight was prompted by fear
rather than guilt had already been suggested in argument
to the jury by defence counsel.

4. Four other alleged errors now argued were not raised
in the assignment of errors. It is incumbent upon the de-
fendants in capital cases, as in any other kind of case, to
file adequate assignments of error according to the pro-
cedures provided in G. L. c. 278, §§ 33A–33G. Section 33E
of that chapter does not affect the applicability of the other
sections in capital cases but only empowers us to order a
new trial "'if satisfied' that because of error of law or of
fact the verdict is a miscarriage of justice, or where because
of newly discovered evidence or for some other reason jus-
tice requires a new trial." *Commonwealth* v. *Bellino,*
320 Mass. 635, 646. We deal briefly with three of these

contentions. None of them demonstrates any injustice which would require corrective action by us under § 33E. (a) Four questions were put to a character witness for the defendant on cross-examination. Two questions were excluded. The two questions allowed are not conceded by the Commonwealth to have been improper. Any error, however, was harmless because the questions whether the witness's opinion of the defendant would be detrimentally affected by certain assumed facts about him merely stated the prosecution's theory of the defendant's role in the murder, with which the jury were already familiar. In addition, the witness answered in the negative to both questions.

(b) The judge properly excluded clearly hearsay testimony by the defendant's grandmother about what the defendant said to her when he arrived at her house several hours after the murder.

(c) There is no merit to the contention that the procedure provided in G. L. c. 265, § 2, for having the jury determine in a single verdict both guilt and punishment for first degree murder violates the Fifth and Fourteenth Amendments to the United States Constitution. The United States Supreme Court has recently resolved this issue in *McGautha* v. *California*, decided with *Crampton* v. *Ohio*, 402 U. S. 183, 208–220, in which the court sustained the constitutionality of a similar Ohio statute.

5. The defendant's final argument stems from the denial of his motion for a new trial. The motion, as amended some six and one-half months after it was originally filed, was based on allegedly newly discovered evidence outlined in four affidavits. Three of these were to the effect that the defendant was in the car on the night of the murder because Gagliardi had offered him a ride home from "The Attic." One of the three, by the defendant's father, also contained an account of an incident which would suggest that the derringer found in the back of the car belonged to Lanzi. That affidavit asserted also that defence witnesses

who were to be called to testify to the substance of the affidavits were prevented from testifying at trial by a threatening telephone call made to the defendant's father during the trial. The fourth affidavit, by counsel for the defendant on behalf of a Medford police officer, stated the substance of a conversation with the defendant's father before the defendant was apprehended to the effect that the defendant was hiding only because he was frightened of Gagliardi.

If the evidence described in the affidavits had been offered at trial in admissible form and believed by the jury, this information might well have led to a different result. The opening statement for the defendant indicates that the defence did in fact intend to introduce such evidence. The evidence thus was hardly newly discovered, although the affidavits advance a reason why much of it was not offered at trial. The threatening telephone call, however, does not explain why neither the defendant's father, who stated in his affidavit that he pleaded with the others to testify despite the call, nor the Medford police officer was called to testify. Nor is there any explanation for the delay of over six and one-half months before defence counsel presented this information to the court. Much of the information stated in the affidavits was hearsay and would not have been admissible in that form in any event.

The motion for a new trial on the ground of newly discovered evidence was addressed to the sound discretion of the trial judge. *Commonwealth* v. *Dascalakis,* 246 Mass. 12, 32–33. *Commonwealth* v. *Sacco,* 255 Mass. 369, 449. *Commonwealth* v. *Devereaux,* 257 Mass. 391, 394–395. *Commonwealth* v. *Chin Kee,* 283 Mass. 248, 257. *Commonwealth* v. *Wallace,* 304 Mass. 680. *Commonwealth* v. *Sheppard,* 313 Mass. 590, 611. *Commonwealth* v. *Coggins,* 324 Mass. 552, 555. *Commonwealth* v. *Robertson,* 357 Mass. 559, 562. His disposition of it "is not to be reversed unless a survey of the whole case shows that his decision, unless reversed, will result in manifest injustice." "Even if the nature of the evidence is such as to justify a belief that if it had been

introduced at the trial the result of the trial would have been different, the judge is not required to grant the motion." *Sharpe, petitioner,* 322 Mass. 441, 444-445. *Commonwealth* v. *Robertson, supra,* at 562. The 1966 amendment (c. 301) of G. L. c. 278, § 29, to allow the granting of a new trial where it appears to the trial judge that "justice may not have been done" has not altered the nature of our review of his action. *Commonwealth* v. *Stout,* 356 Mass. 237, 242.

The weight and import of the affidavits submitted were likewise for the trial judge's discretion. *Commonwealth* v. *Heffernan,* 350 Mass. 48, 53. He did not have to accept them as true even though they were undisputed. *Commonwealth* v. *Sacco,* 255 Mass. 369, 450. *Commonwealth* v. *Millen,* 290 Mass. 406, 410. *Commonwealth* v. *Doyle,* 323 Mass. 633, 637. *Commonwealth* v. *Coggins,* 324 Mass. 552, 557. In weighing the new evidence presented he was entitled to make use of his knowledge of what had taken place at the trial (*Commonwealth* v. *Sacco, supra,* at 451; *Commonwealth* v. *Chin Kee,* 283 Mass. 248, 257), and he was not required to give reasons for his action. *Commonwealth* v. *Sacco, supra,* at 450. Finally, there was no requirement that the judge hear oral testimony in support of the affidavits; he was free to choose the procedure by which he would consider the motion. *Commonwealth* v. *Millen, supra,* at 410. *Commonwealth* v. *Coggins, supra,* at 556-557. *Commonwealth* v. *Heffernan, supra,* at 54. In these circumstances the record does not disclose any abuse of discretion in the judge's denial of the motion, which followed oral argument by both sides and the submission of the four affidavits in support of the motion.

6. Acting under G. L. c. 278, § 33E, as amended through St. 1962, c. 453, we have carefully reviewed the evidence. We have done this particularly with a view to testing the defendant's contention unsupported by evidence and referred to principally in the defendant's unsworn statement to the jury that he was in a motor vehicle in the process of

being driven home when he was caught up in a situation of murder in which he personally was not involved. Our review indicates that it was open to the jury to return the verdict which they did, and that justice does not require the entry of a verdict of a lesser degree of guilt than that returned by the jury or that there be a new trial.

*Judgments affirmed.*

TAURO, C. J. (dissenting). After a careful review of the entire record I am unable to agree with the majority opinion that the defendant's constitutional right to a fair trial has been preserved. I will discuss several of the factors which, in combination, lead me to this decision.[1]

The defendant, over his objection, was tried jointly with a codefendant.[2] The codefendant pleaded guilty (in the absence of the jury) to murder in the second degree at the conclusion of the evidence. The trial then resumed with only the defendant De Christoforo present. The judge stated, "Mr. Foreman, madam and gentlemen of the jury. You will notice that the [co]defendant Gagliardi is not in the dock. He has pleaded 'guilty,' and his case has been disposed of. We will, therefore, go forward with the trial of the case of Commonwealth vs. De Christoforo. The arguments will be held at two o'clock this afternoon."

During the course of the prosecutor's closing arguments to the jury he made certain remarks which are conceded to have been improper.[3] An issue raised by these remarks is

---

[1] I disagree also with the majority ruling concerning the defendant's right to inspect the grand jury minutes. I make no further comment on this issue except to express my concurrence with the viewpoint of Spiegel, J., in his dissenting opinion.

[2] There was no abuse of discretion in the denial of the defendant's motion for a separate trial.

[3] THE PROSECUTOR: "I am sure you will have no trouble at all reaching a verdict in this case. I don't know what they want you to do by way of a verdict. They said they hope that you find him not guilty. I quite frankly think that they hope that you will find him guilty of something a little less than first-degree murder." DEFENDANT'S COUNSEL: "I object to that." THE JUDGE: "I don't think —." DEFENDANT'S COUNSEL: "That is not fair argu-

whether they were so prejudicial in nature in the circumstances of the case as to require a new trial. There are two subdivisions to this issue: 1. Should the judge have immediately instructed the jury at the time the remarks were made? 2. Were the instructions given by the judge to the jury during his general charge sufficient to overcome the prejudicial harm to the defendant? If there exists a reasonable doubt as to the resolution of these questions it must be resolved in favor of the defendant.

In accordance with our statutory authority and responsibilities we must examine improper remarks of the prosecution in the context of the entire case. G. L. c. 278, § 33E.

The jury should have been given explicit instructions that they were to draw no inference as to De Christoforo's innocence or guilt from the elimination of the codefendant from the case. Announcing to the jury merely that the codefendant had pleaded guilty, without more, had the probable effect of leading to surmise and speculation in its deliberation. In such circumstances failing to give explicit instructions diminished significantly the defendant's right to a fair and impartial verdict.

De Christoforo, left as the sole defendant, and without appropriate instruction to the jury, found himself in a precarious position. It was in this setting that the prosecutor made improper remarks in his closing argument to the jury.

As the Supreme Court of the United States has stated, the prosecuting attorney "is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its ob-

---

ment." The judge: "No." Defendant's counsel: "That isn't so." The prosecutor: "Let's talk about murder in the first degree."

At the hearing on the motion for a mistrial the judge maintained that irrespective of its absence in the official transcription, he had stated, at the time of the improper remarks, in response to the defendant's objection, "No. This is improper argument." However, this statement does not appear in the official transcript of the evidence. See G. L. c. 233, § 80. If the court stenographer did not hear the judge's statement it is reasonable to assume that the jury did not. Moreover, as it will be urged later, if these instructions were in fact given they were far from adequate.

ligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. . . . He may prosecute with earnestness and vigor — indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Berger* v. *United States*, 295 U. S. 78, 88. See *Smith* v. *Commonwealth*, 331 Mass. 585, 591; *People* v. *Talle*, 111 Cal. App. 650, 678–679.

It must be emphasized that the highly prejudicial nature of the prosecutor's statement to the jury can be fully assessed only in context with the fact that the jury already knew that the codefendant had pleaded guilty. The jury had received no clarifying instructions as to this turn of events. In the circumstances, the prosecutor's argument may have left an inference with the jury that both defendants had offered to plead guilty to a lesser charge than first degree murder, and that the district attorney had accepted the codefendant's offer but rejected De Christoforo's offer. Even if the defendant had offered to plead to a lesser offence, this fact would have been inadmissible. Indeed, its admission would constitute fatal error. See *Kercheval* v. *United States*, 274 U. S. 220; *State* v. *Abel*, 320 Mo. 445. In the present case, however, there is nothing to suggest that the defendant or his attorney had at any time negotiated for a guilty plea or conceded the defendant's guilt.

Furthermore, shortly after making the first improper statement, the prosecuting attorney compounded the original impropriety by stating his personal belief as to the guilt of the accused.[4] It is, of course, a well established rule that an attorney may not properly state his personal belief in argument to the jury. *Commonwealth* v. *Cooper*, 264 Mass.

---

[4] "I honestly and sincerely believe that there is no doubt in this case, none whatsoever. I honestly and sincerely believe that you people feel that way."

368, 374. *Commonwealth* v. *Sherman*, 294 Mass. 379, 391. See *Betts* v. *Randle*, 236 Mass. 441, 444; *Doherty* v. *Levine*, 278 Mass. 418, 419. As the Court of Appeals for the First Circuit has stated, "To permit counsel to express his personal belief in the testimony (even if not phrased so as to suggest knowledge of additional evidence not known to the jury), would afford him a privilege not even accorded to witnesses under oath and subject to cross-examination. Worse, it creates the false issue of the reliability and credibility of counsel. This is peculiarly unfortunate if one of them has the advantage of official backing." *Greenberg* v. *United States*, 280 F. 2d 472, 475 (1st Cir.). See *Harris* v. *United States*, 402 F. 2d 656, 657–659 (D. C. Cir.); *Hall* v. *United States*, 419 F. 2d 582, 586 (5th Cir.). The statement by the prosecutor of his personal belief in the defendant's guilt compounded the serious harm resulting from the prosecutor's earlier improper statement, for the statements taken together might lead to an inference that the prosecutor had personal knowledge of the defendant's guilt by reason of the defendant's unsuccessful attempt to plead to a lesser crime. The cumulative effect of the remarks of the prosecutor with no adequate and corrective instructions, coupled with the jury's knowledge without clarifying instructions that the codefendant had pleaded guilty at the close of the evidence, seriously prejudiced the defendant's right to a fair trial.

Moreover, the judge in his final instructions failed to correct the harmful effect of the improper argument. It is the rule of this Commonwealth that the jurors are generally expected to follow instructions to disregard matters withdrawn from their consideration. *Commonwealth* v. *Bellino*, 320 Mass. 635, 645. *Commonwealth* v. *Crehan*, 345 Mass. 609, 613. However, there have been persuasive opinions that correcting instructions cannot overcome serious prejudicial effect. What was stated by Justice Jackson in his concurring opinion in *Krulewitch* v. *United States*, 336 U. S. 440, 453, constitutes a practical and realistic appraisal of

the situation. "The naive assumption that prejudicial effects can be overcome by instructions to the jury . . . all practicing lawyers know to be unmitigated fiction." There are circumstances in which the prejudicial effect is of such proportions that it cannot be corrected by instructions to the jury.[5] In *Bruton* v. *United States*, 391 U. S. 123, 135, the court stated: "[T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." Moreover, corrective instructions must be sufficiently strong to accomplish the purpose of counteracting the adverse effect of the prejudicial remarks or evidence. *Heina* v. *Broadway Fruit Mkt. Inc.* 304 Mass. 608, 611. *Commonwealth* v. *Crehan, infra.* See *London* v. *Bay State St. Ry.* 231 Mass. 480, 485–486; *Stricker* v. *Scott*, 283 Mass. 12, 14–15.

In the instant case, the judge did not instruct the jury at the time the improper argument was made nor did he call for an immediate retraction. See *Commonwealth* v. *Cabot*, 241 Mass. 131. In his final instructions to the jury the trial judge made the routine observation that arguments of counsel are not evidence: "Consider the case as though no such statement was made." In the circumstances of this case the instructions were far from sufficient to overcome the serious damage done. "It was the duty of the judge to emphasize the fact that the argument had been grossly improper; to point out in plain, unmistakable language the particulars in which it was unwarranted and to instruct the jury to cast aside in their deliberations the improper considerations that had been presented to them, using such clear and cogent language as would correct the obviously

---

[5] Error was found in *Commonwealth* v. *Cabot*, 241 Mass. 131 (that defendant's defence was a technical one), and in *Commonwealth* v. *Domanski*, 332 Mass. 66, 69–70 (that an unfavorable inference should be drawn from the defendant's failure to call witnesses where there was no evidence that the defendant had witnesses he could call). *Worcester Telegram & Gazette, Inc.* v. *Commonwealth*, 354 Mass. 578. *Commonwealth* v. *Gordon*, 356 Mass. 598, 603–604.

harmful effect of the argument. This was not done." *Commonwealth* v. *Cabot*, 241 Mass. 131, 150–151. *London* v. *Bay State St. Ry.* 231 Mass. 480, 486.

The majority opinion notes that if defence counsel had requested immediate instructions at the time of the improper remarks the judge would have given them and that "[i]n the absence of a suitable request the defendant cannot now successfully argue that an immediate instruction to the jury was necessary to erase the prejudicial effect of the remark." In a capital case where a man's life may be at stake, and in view of the requirements of G. L. c. 278, § 33E (as amended through St. 1962, c. 453), this view of the majority is untenable. The trial judge has the ultimate responsibility (as we have on review) of guaranteeing the defendant a fair trial. In the circumstances of this case it was the judge's obligation immediately, with clear and unmistakable language, to instruct the jury that the prosecutor's arguments were grossly improper. Moreover, he should have ordered their retraction by the prosecutor. Even though defence counsel may not have moved for immediate corrective instructions, his objections to the remarks were sufficient to require immediate action by the judge. The prosecutor's comments were so prejudicial in nature that the judge should have acted sua sponte. In the total circumstances of the case nothing less could have safeguarded the defendant's constitutional right to a fair trial.

The remarks of the prosecution in this case were far more prejudicial than the newspaper publicity of the defendant's criminal record in the *Crehan* case.[6] The prosecutor's argument in the instant case permitted or perhaps even suggested an inference that the defendant had conceded his

---

[6] In *Commonwealth* v. *Crehan*, 345 Mass. 609, during the trial certain newspaper articles implied that each defendant had a criminal record. "On this assumption some action by the judge was required to overcome the possibility of prejudice. The judge recognized this and, rejecting the argument for a mistrial, decided that immediate instructions were not required and that a general caution in the charge would be adequate." This court further stated, "Postponing any instruction until the charge, however, risked an adverse effect in the interval." Judgments were reversed.

guilt and was merely hoping for something a little less than a verdict of murder in the first degree. This diminished his chance for a fair trial to a far greater degree than would have the publication in a newspaper of his criminal background. Unlike a newspaper, the prosecutor ostensibly speaks with the authority of his office. The prosecutor's "personal status and his role as a spokesman for the government tend[ed] to give what he . . . [said] the ring of authenticity . . . tend[ing] to impart an implicit stamp of believability." Hall v. United States, 419 F. 2d 582, 583–584 (5th Cir.). The prosecutor's remarks probably called for a mistrial. In any event the judge's failure to instruct the jury adequately and with sufficient force to eliminate the serious prejudice to the defendant constitutes fatal error. Moreover, the judge's routine final instructions to the jury were far from sufficient to correct the error. By then the defendant's position had so deteriorated that his chances for a fair deliberation of his fate by the jury were virtually eliminated.

For these reasons I believe that the defendant did not receive a fair trial. I would grant a new trial.

SPIEGEL, J. (dissenting). I am in complete accord with the Chief Justice's dissenting opinion. Nevertheless I feel impelled to also state my disagreement with the majority's adherence to the rule requiring the defendant to show a "particularized need" to inspect the grand jury minutes of the testimony of witnesses who testified before the grand jury and who subsequently testified at the trial.

1. The current rule imposes on the defendant a well-nigh intolerable burden, and is thus out of touch with the "growing realization that disclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of criminal justice." Dennis v. United States, 384 U. S. 855, 870. In the case at bar for instance, the majority hold that the defendant was not entitled to disclosure because he "did not show that the grand jury

minutes would cast further light as to either of the alleged inconsistencies . . . or that the grand jury testimony might be in any other way inconsistent with Carr's testimony at trial." How could the defendant make such a showing, in the absence of an admission by the witness (see, e.g. *Commonwealth* v. *Carita*, 356 Mass. 132, 141–142), without first inspecting the minutes? It is a formidable task confronting a defendant to show a "particularized need," unless perchance he is possessed of supernatural powers. In the case of *Jencks* v. *United States*, 353 U. S. 657, 667–668, involving a defendant's request for inspection of written reports of F. B. I. agents concerning events as to which they testified at trial, the court pointed out: "Requiring the accused first to show conflict between the reports and the testimony is actually to deny the accused evidence relevant and material to his defense. The occasion for determining a conflict cannot arise until after the witness has testified, and unless he admits conflict . . . the accused is helpless to know or discover conflict without inspecting the reports. A requirement of a showing of conflict would be clearly incompatible with our standards for the administration of criminal justice in the federal courts and must therefore be rejected."

This court in *Commonwealth* v. *Cook*, 351 Mass. 231, 233, citing *Pittsburgh Plate Glass Co.* v. *United States*, 360 U. S. 395, and *Dennis* v. *United States*, 384 U. S. 855, has said that our rule requiring a defendant to show a "particularized need" appears to be the same as the Federal rule. We should recognize, however, that many Federal Courts of Appeals have interpreted the *Dennis* case as implicitly repudiating the "particularized need" standard.[1] One court in the case of *Cargill* v. *United States*, 381 F. 2d 849, 851–

---

[1] Since the Supreme Court in the *Dennis* case based its decision upon its supervisory powers over the Federal District Courts and not upon a constitutional right of the accused, we are not compelled to follow it. *Connor* v. *Picard*, 308 F. Supp. 843, 846 (D. Mass.). This case and other Federal cases noted in this dissent are cited not because they are controlling but because I believe that they represent a rule of reason.

852 (10th Cir.) has said relative to the opinion in the *Dennis* case: "The Court retains the requirement that 'particularized need' be shown in order that the secrecy may be lifted, but holds *in effect* that such need is shown when the defense states that it wishes to use the transcript for the purpose of impeaching a witness, to refresh his recollection, or to test his credibility. Thus the Court as far as cross-examination is concerned has removed most, if not all, of the substance from the particularized need requirement, although it has retained the term. Under this opinion, it appears that the defense is entitled to the grand jury transcript of the witness's testimony when the jury's functions are ended, and when the request is made during the course of trial that it is necessary for the purpose of cross-examining such witness for the above mentioned purposes. The Supreme Court mentions and relies to some extent on the rationale of *Jencks* v. *United States*, 353 U. S. 657 . . . on this point. The Court also states 'that . . . it is rarely justifiable for the prosecution to have exclusive access to a storehouse of relevant fact. Exceptions to this are justifiable only by the clearest and most compelling consideration.' "

Three Courts of Appeals have held that once a government witness has testified at trial, the defendant has a right to examine his grand jury testimony on the subjects about which he testified at the trial, unless the government can show special circumstances exist justifying a protective order. *United States* v. *Youngblood*, 379 F. 2d 365, 370 (2d Cir.). *United States* v. *Amabile*, 395 F. 2d 47, 53 (7th Cir.). *Harris* v. *United States*, 433 F. 2d 1127, 1128–1129 (D. C. Cir.). The First Circuit Court, in *Schlinsky* v. *United States*, 379 F. 2d 735, 740 (1st Cir.), has said that, in the light of the *Dennis* opinion, "the requirement of 'particularized need' is very easily met. Here, as in [the] *Dennis* [case], it was for cross-examination." But cf. *Walsh* v. *United States*, 371 F. 2d 436 (1st Cir.).

The American Bar Association (Standards Relating to

Discovery and Procedure Before Trial, § 2.1 [a] [iii], p. 13 [Approved Draft 1970]) has recommended that the prosecutor be required to disclose those portions of the grand jury minutes containing relevant testimony of persons whom he intends to call as witnesses at the trial. Several State statutes grant defendants similar rights of inspection in advance of trial. E.g. Cal. Penal Code § 938.1; Iowa Code Ann., § 772.4; Ky. Rev. Stat., Rules of Criminal Procedure, Rule 5.16 (2); Minn. Stat. Ann., § 628.04; Okla. Stat. Ann., Tit. 22, § 340.

It is true that in certain instances it may be advisable to maintain grand jury secrecy in advance of trial to protect the safety of witnesses. (See, e.g. *Posey* v. *United States*, 416 F. 2d 545 [5th Cir.], the case involving the murder of three civil rights workers near Philadelphia, Mississippi, in June, 1964.) But as courts and commentators have often pointed out, once a witness has testified at trial, the reasons for preserving grand jury secrecy simply fade away. *Commonwealth* v. *Mead*, 12 Gray, 167, 170. *State* v. *Faux*, 9 Utah 2d 350, 353. *Pittsburgh Plate Glass Co.* v. *United States*, 360 U. S. 395, 405–406 (dissenting opinion). Sherry, Grand Jury Minutes: The Unreasonable Rule of Secrecy, 48 Va. L. Rev. 668, 674. Calkins, Grand Jury Secrecy, 63 Mich L. Rev. 455, 476–477. As Dean Wigmore (Wigmore, Evidence [McNaughton rev. 1961] § 2362, at p. 736) has said concerning the grand jury witness: "If he tells the truth and the truth is the same as he testified before the grand jury, the disclosure of the former testimony cannot possibly bring to him any harm (in the shape of corporal injury or personal ill will) which his testimony on the open trial does not equally tend to produce." On the other hand, "if the grand jury testimony is inconsistent with the testimony given at trial, then fair play seems to dictate that the defendant be allowed use of the grand jury minutes for impeachment purposes, unless there is a compelling need for secrecy to protect individuals or in the aid of national security." *United States* v. *Barson*, 434 F. 2d 127, 129–130 (5th Cir.).

Our decisions holding to the "particularized need" standard are of comparatively recent origin. I do not, however, find this a persuasive reason to follow a rule which does not stand the light of logical analysis. The principal of stare decisis is not absolute because no court is infallible. There should be no reluctance to overrule a decision which is wrong, either because it was not sound when originally promulgated or because subsequent events prove it to be wrong.[2]

Footnote 2 of the majority opinion indicates that if the defendant had included the grand jury minutes in the record on appeal, this court could have then determined whether the defendant had been prejudiced by the judge's action in denying the defendant the right to inspect them, or in refusing to read them himself "in camera." I do not believe that a trial judge or an appellate court should conclude that a defendant would not have been able to undermine a witness's credibility by use of the grand jury minutes. This should be the sole privilege of the defendant. "In our adversary system, it is enough for judges to judge. The determination of what may be useful to the defense can properly and effectively be made *only* by an advocate" (emphasis supplied). *Dennis* v. *United States*, 384 U. S. 855, 875. This is vastly different from the situation where a question has been excluded in direct examination and an offer of proof is before this court. In such an instance, of course, this court could determine that the evidence contained in the offer of proof would not have benefited the defendant. In cross-examination using the grand jury minutes, we have no means of knowing just what questions counsel for the defendant might ask, or what the answers

---

[2] It may be argued that the impact of an abrupt reversal is lessened by an assertion that a court from a date in the future will no longer follow the rule originally enunciated. See, e.g. *Colby* v. *Carney Hosp.* 356 Mass. 527; *United States* v. *Youngblood*, 379 F. 2d 365, 370 (2d Cir.); *United States* v. *Amabile*, 395 F. 2d 47, 53 (7th Cir.). Although I appreciate the validity of such a prospective holding in a civil case, I see no merit whatever in such a theory when a defendant's life or liberty is at stake.

might be, or what benefit the defendant might derive therefrom.

I am of the firm opinion that we should hold that the Commonwealth, after a witness has testified at trial or at any preliminary or voir dire hearing, be required to turn over to the defendant the relevant portion of his grand jury testimony, unless the Commonwealth can demonstrate a compelling need to keep such testimony secret. *Disclosure* facilitates the fact finding process; *secrecy* only inhibits it.

2. Officer Carr testified that the defendant told a false story about the dead man in the car. The Commonwealth introduced this evidence to show consciousness of guilt. Cross-examination of the officer showed that he had previously testified at a probable cause hearing that it was Oreto who told this falsehood. Even if I were inclined to follow the rationale employed by the majority I would feel obliged to hold that the requisite "particularized need" was established and consequently would be unable to conclude that the judgment in this case should be affirmed. See *Commonwealth* v. *Carita*, 356 Mass. 132, 141–142; *Commonwealth* v. *Doherty*, 353 Mass. 197, 215–216 (dissenting opinion). Compare *Commonwealth* v. *Kiernan*, 348 Mass. 29, 36.

The Commonwealth should have no interest in convicting an accused on the basis of testimony which has not been so thoroughly impeached as the evidence permits. I see no basis for the apparent assumption by the majority, without having seen the grand jury minutes, that De Christoforo could not benefit from an examination of them because he had "made full use of . . . [an] inconsistency [at an earlier probable cause hearing] . . . to impeach Carr's testimony at the trial." In this area of disclosure of grand jury testimony, the Supreme Court of the United States has said: "There is no justification for relying upon 'assumption.'" *Dennis* v. *United States*, 384 U. S. 855, 874.

In a similar situation, a Federal Court has held that "[i]nconsistent testimony on a crucial issue by the principal prosecution witness demonstrated 'a particularized

need' as required by *Pittsburgh Plate Glass Co.* v. *United States*, 360 U. S. 395, 400 . . . to produce the pertinent grand jury minutes." *Harrell* v. *United States*, 317 F. 2d 580, 581, fn. 5 (D. C. Cir.). There the arresting officer had given several different versions of his seizure of narcotics from the defendant's taxicab. The judge refused to allow the defendant to examine the officer's grand jury testimony, or to do the same himself in camera, apparently on the theory that any possible material inconsistencies would be merely cumulative. The court quite rightly pointed out that "[n]ot having seen the grand jury testimony, the trial judge was in no position even to speculate on what effect its disclosure might have had on Hutcherson's credibility, with him or with the jury. We cannot assume that Hutcherson was so discredited by the disclosed inconsistencies that further discrediting was impossible." *Id.* at 581.

3. I make no pretence of determining the defendant's innocence or guilt. However, I am convinced that he did not receive a fair trial and thus I would reverse the judgment and set aside the verdict.